Kathleen WAILAND, et al.,
Plaintiffs–Appellants,

v.

ANHEUSER BUSCH INC.,
Defendant–Respondent.

No. 60510.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 3, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 8, 1993.

Application to Transfer Denied
Oct. 26, 1993.

Leonard P. Cervantes, Mario Silva, Frank Carretero, St. Louis, for plaintiffs-appellants.

Daniel T. Rabbitt, Steven J. Hughes, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Plaintiffs Kathleen Wailand, and the surviving children of William Wailand (appellants), appeal from a jury verdict in favor of defendant Anheuser–Busch. Appellants brought their wrongful death action against Anheuser–Busch (respondent) for injuries sustained by William Wailand (Wailand) arising out of allegations of a dangerous condition on respondent's loading dock that caused Wailand to fall and strike his head. Appellants assert that this fall caused the stroke which eventually took Wailand's life. Appellants charge error to the trial court for (1) admitting the entire portion of Wailand's death certificate, (2) admitting expert testimony, and (3) improper jury instructions. We affirm.

The evidence at trial established that on June 30, 1986, Wailand, an over-the-road truck driver, arrived at respondent's loading dock with a cargo of beer from their Columbus, Ohio, brewery. While waiting for his truck to be unloaded, Wailand tripped over a load lock[1] protruding from its storage rack on the dock, and hit his head on a wall. Afterwards, Wailand returned to the cab of his truck, where he was later found by the loading dock supervisor curled up in a fetal position and drooling profusely. An ambulance rushed Wailand to a nearby hospital.

Upon his arrival, the emergency room personnel observed no physical signs of injury to Wailand's head, but still administered a CAT scan designed to identify trauma to Wailand's brain. This test uncovered no evi-

---

1. Load locks are long rods which fit between the end of the cargo and the wall of the trailer to prevent shifting of the load during transport.

dence of trauma and led them to believe Wailand had suffered a stroke. An ultrasound confirmed their initial diagnosis and revealed a complete blockage of Wailand's right internal carotid artery which had cut off the blood supply to his brain, and caused the stroke. Wailand slipped into a coma and died approximately three weeks later from pneumonia, a complication stemming from the stroke.

At trial, the case primarily turned on causation, and on the issue whether respondent negligently stored its load locks, creating an unsafe condition. Through expert medical testimony, appellants advanced the theory that Wailand's stroke stemmed from his fall. The gist of their contention is that respondent's negligence, coupled with Wailand's preexisting condition of arteriosclerosis which narrowed his arteries and restricted blood flow, caused the stroke that ultimately resulted in his death. Appellants assert that the fall caused a hyperextension of his neck, which in turn, caused a tear in his right carotid artery. A blood clot then formed at this spot, blocked off the blood supply to his brain, and caused the stroke. Respondent contends that the stroke was unrelated to the fall. The jury found in favor of the respondent.

Appellants' first point alleges the trial court erred in admitting the entire certified copy of Wailand's death certificate as evidence that his death was not accidental. Specifically, appellants charge error to admission of questions 28 and 29(a). Appellants contend that the answers to these questions were inadmissable conclusions of law.

■ Under Missouri law, a certified copy of a death certificate is prima facia evidence of the facts stated therein. § 193.255 R.S.Mo.1986. This assertion is limited to statements of fact contained in the death certificate, not conclusions of the person completing it. *Callahan v. Connecticut Gen. Life Ins.*, 357 Mo. 187, 207 S.W.2d 279, 286–287 (1947).

■ In the present case, Wailand's treating physician, Dr. Crafts, executed the death certificate and indicated in question 28 that the case was not referred to the medical examiner. Generally, a death certificate executed by one having no personal knowledge of the facts is inadmissible. *Callahan*, 207 S.W.2d at 286. However, the statements required of the attending physician found in the death certificate are usually facts within their personal knowledge. *Id.*

■ Clearly, Dr. Crafts' based his decision not to refer the case to the medical examiner on personal knowledge. Dr. Crafts treated Wailand from the time he was admitted into the hospital on June 30, 1986, until Wailand's death on July 26, 1986. He also had knowledge of Wailand's medical history, including his preexisting condition of arteriosclerosis, hypertension, high blood pressure, and the symptoms he experienced stemming from the accident. In addition, before making the ultimate decision not to refer Wailand's case to the medical examiner, Dr. Crafts consulted two CAT scan examination results that revealed no evidence of trauma to Wailand's brain as a result of the fall. Based on medical test results and personal observations, Dr. Crafts concluded that Wailand had "a fairly standard stroke," and made an informed decision not to refer the case to the medical examiner. Therefore, Crafts' answer to question 28 on the death certificate was properly admitted into evidence as a statement of fact based on personal knowledge, and was not a conclusion of law.

Appellants' complaint about question 29(a) is similarly without merit. Question 29(a) asks the executor of the death certificate to specify whether death was by accident, suicide, homicide, undetermined, or under pending investigation. Dr. Crafts left this question blank, giving rise to the inference that he did not believe Wailand's death stemmed from the fall.

This issue, whether such an inference is permissible, was indirectly addressed in *Jones v. Atlanta Life Ins. Co.*, 289 S.W.2d 438, 440 (Mo.App.1956), a case strikingly similar to this one. In *Jones*, the decedent, who had preexisting conditions of arteriosclerosis and hypertension, fell and struck her head. *Id.* at 440. Although there were no visible signs of external injuries or damage to decedent's head, she died three hours later from a cerebral hemorrhage. *Id.* At trial, the

issue focused on causation, and the plaintiff offered expert medical testimony that the jarring or shaking of brain tissue during decedent's fall could have caused a blood vessel in her brain to rupture, thereby causing the stroke. *Id.* Weighing the evidence, the jury found for the plaintiff. *Id.*

The court allowed a death certificate containing a blank space after the question "If death was due to external causes, fill in the following ___," to be used as evidence that decedent did not die as a result of a fall. *Id.* The admission of this evidence allowed the jury to speculate that the person who filled out the death certificate did not believe that the fall caused decedent's death.

■ Likewise, the trial court in this case did not err in allowing question 29(a) and other blank portions of Wailand's death certificate as evidence that Wailand did not die as a result of the accident on respondent's premises. This evidence, along with Dr. Crafts' decision not to refer the case to the medical examiner because he felt Wailand had a "fairly standard stroke" and his awareness that accidental deaths were to be referred to the medical examiner, supported respondent's theory that the stroke was not caused by the fall. The blank portions of the death certificate were not conclusive, but instead constituted proper evidence for the jury to weigh against appellants' experts who testified that the fall on respondent's loading dock caused Wailand's stroke.

Appellants have also relied on *Callahan* and *Lynde v. Western and Southern Life Ins. Co.*, 293 S.W.2d 147 (Mo.App.1956), for the proposition that introduction of the death certificate containing question 29(a) was in error. These two cases involved insurance policy claims and dealt with a standard portion of the death certificate inquiring whether cause of death was due to accident, suicide, homicide, or undetermined. In these cases, the person filling out the death certificate did not have personal knowledge concerning the details of the deaths, but nevertheless answered the question on the certificate. In each case, the courts correctly held that these statements on the death certificate were inadmissible conclusions. *Callahan,*

207 S.W.2d at 287; *Lynde,* 293 S.W.2d at 150–51.

We do not consider these cases to be applicable. When a person dies as a result of violence by homicide, suicide, or accident, the case must be referred to the medical examiner to determine the cause of death. § 58.-720(1), R.S.Mo.1986. Dr. Crafts testified by deposition that, if he suspected the death was related to an accident, the law required him to refer the case to the medical examiner. Moreover, Dr. Crafts' belief that Wailand died from a stroke, "period", precluded him from filling out this portion of the death certificate. Since he based this decision on his personal knowledge of Wailand's medical condition, the admission into evidence of both question 29(a) and the blank answer following it did not constitute an inadmissable conclusion. Point denied.

Appellants' second and third points focus on the testimony of Doctors David Crafts and Mary Case. Each testified that the circumstances surrounding William Wailand's death were such that the matter was not required to be reported to the Medical Examiner of the City of St. Louis in accordance with § 58.720(1), R.S.Mo.1986. That section provides that whenever a person dies as a result of "Violence by homicide, suicide, or accident ..." the incident is to be reported to the medical examiner who shall investigate and certify the cause of death. Respondent argued that the failure of Doctor Crafts to make such a report to the medical examiner was an expression of opinion that Wailand's death was not the result of any of the named causes, particularly "accident," but rather a natural cause. This view of Doctor Crafts' failure to report Wailand's death was echoed by Doctor Case in her testimony.

■ Appellants are precluded from arguing on appeal that admitting this portion of Dr. Crafts' deposition testimony concerning Wailand's death certificate was improper. A party who has conveyed information to a jury during its opening statement or who has introduced evidence concerning a certain fact, may not on appeal complain that his opponent was allowed to introduce related evidence in rebuttal or explanation. *Boyer v. Eljer Mfg., Inc.,* 830 S.W.2d 535, 537 (Mo.

App.1992). In this case, appellants' counsel first mentioned to the jury that Dr. Crafts did not refer the case to the medical examiner.[2] Later, during appellants' case-in-chief, an expert witness proffered his opinion that Dr. Crafts' failure to refer the case to the medical examiner did not support a conclusion that Wailand's death did not stem from the accident.[3] Appellants introduced additional expert testimony from a neurologist suggesting an alternative theory that Dr. Crafts' failure to refer the case to the medical examiner was simply a mistake.[4] Appellants elicited this evidence prior to the reading of Dr. Crafts' deposition testimony. Since appellants themselves had presented this testimony in an attempt to persuade the jury that several other plausible scenarios explained why the case was not referred to the medical examiner, they are precluded from complaining about Dr. Crafts' testimony on appeal.

Appellants also state that Dr. Mary Case's testimony that Dr. Crafts failure to refer the case to the medical examiner meant that Wailand died a natural death was an improper conclusion. Appellants object to the following testimony:

Q. [Respondent's counsel] If the treating doctor believes that no accident was involved, or the circumstances are such that no accident is involved or questioned, are they then allowed to go ahead and sign the death certificate?

[Objection by Appellants' counsel]

THE COURT. Overruled.

A. [Dr. Case] Certainly. If there is nothing to lead him to believe that it is a medical examiner's case, then certainly he is able to sign the death certificate. It is then a natural death, and if there is a treating physician on a natural death, and he has seen the patient in the last three weeks, he is entitled to sign the death certificate, and should do so.

Q. As far as the death of William Wailand, in the City of St. Louis and the State of Missouri, is this considered a natural death?

[Objection by Appellants' counsel]

THE COURT. Overruled.

A. The way the death certificate is signed here, it is a natural death, yes.

■ An expert's opinion must be based upon facts within the expert's personal knowledge and observations, or upon facts supported by competent evidence. *Coppedge v. Missouri Highway and Transp. Comm'n,*

2. During his opening statement appellants' counsel summarized:
Dr. Crafts will tell you that he didn't really do much except sign the death certificate and didn't give it much thought, and that they [he] did not refer it to the medical examiner for further investigation. There's going to be some question about whether the doctor should have referred it to the medical examiner for investigation to find out how Mr. Wailand died. And there are some blanks on the bottom of the death certificate that the doctor didn't fill out. There's a blank about whether—whether the death was accidental or whether it happened at work.

3. Q. Does that mean anything to you, Doctor, as to whether or not this man had an accident at work and suffered a stroke as a result of a work related accident?
   A. The only thing it means to me is that the physician who signed the death certificate or his representative did not choose to report it to the medical examiner. Cannot go beyond that as far as if he even thought of it or not or if he thought of it and declined or not. It just was not.
   Q. Okay. Let me ask you, do you attach any significance to that or do you, by looking at the fact that it was failed to be referred to the medical examiner, can you then say, well, this man

didn't have this accident at work? He didn't suffer a stroke because he struck his head at the plant at Anheuser–Busch.
   A. In my opinion you cannot draw any conclusions about that, that by virtue of not referring to medical examiner that the physician did not think any accident was involved—any injury was involved.

4. The testimony was elicited in the following colloquy:
   Q. [Appellants' counsel] There's been some suspicion that certificate, or the patient's case was not referred by Dr. Crafts to the medical examiner. You've had a chance to look at the death certificate?
   A. [Dr. Hanaway] I did.
   Q. Of what significance, if any, is that to you?
   [Objection by Respondent's counsel]
   THE COURT: Overruled. You may answer.
   A. ... I think it was probably just an omission of Crafts. Obviously, the man had trauma from all sorts of sources. It was just an omission of his, and probably he should have put that on there, and probably he should have contacted the medical examiner, but that's the way things work.

809 S.W.2d 164, 167 (Mo.App.1991). In Missouri, an expert may offer his opinion on an ultimate issue in a civil case where the opinion is based on knowledge within his expertise and not a matter of everyday experience available to the jurors. *Wessar v. John Chezik Motors, Inc.*, 623 S.W.2d 599, 602 (Mo.App.1981). Moreover, there is no question that proper opinion testimony about causal connection is competent evidence as long as it is supported by substantive facts. *Harp v. Illinois Cent. R.R.*, 370 S.W.2d 387 (Mo.1963).

▆▆▆▆ A medical expert need not be present at the time of an injury in order to render an opinion concerning the cause of the injury based on personal knowledge. *Kummer v. Cruz*, 752 S.W.2d 801, 808 (Mo.App.1988). In the instant case, it was not prejudicial error to allow Dr. Case to give her opinion that Wailand died of a stroke unrelated to the accident. While Dr. Case was not Wailand's treating physician, she based her opinion that Wailand died a natural death on his medical history and tests conducted in the hospital that revealed his death was not trauma related. Moreover, Dr. Case testified she was familiar with literature concerning appellants' theory of causation and had encountered this theory in her professional practice. Dr. Case disputed appellants' causation theory by testifying that the impact of Wailand's head hitting the wall was insufficient to trigger a hyperextension injury. Instead, she testified the force required to cause this kind of injury is more consistent with motor vehicle or skydiving accidents.

Dr. Case also testified that Wailand's immediate onslaught of symptoms following the accident was inconsistent with this type of injury. She testified that, in normal cases, hyperextension injuries which cause a stroke take between twenty-four and forty-eight hours for the symptoms to appear, and that there was "no way" he could have struck his head and had immediate symptoms. Dr. Case's knowledge of hyperextension injuries, the facts and circumstances of this case, and medical test results performed on Wailand, qualified her to give the opinion that Wailand died a natural death.

▆▆ The real question that must be answered is not whether the admission of Dr. Case's testimony was proper or improper, but whether her testimony prejudiced the appellants. As a general rule, error in the admission of evidence is not grounds for reversal if it does not prejudice the complaining party or adversely affect the jury in reaching its verdict. *Davis v. Mathews*, 649 S.W.2d 256, 259 (Mo.App.1983).

In the present case, Wailand's treating physician, Dr. Crafts, testified at length that he did not refer Wailand's case to the medical examiner because it did not meet the statutory criteria. Also, he signed the death certificate thinking it was a "fairly standard stroke." This necessarily implies that Dr. Crafts felt it was a natural death. Similarly, Dr. Mary Case, who was also familiar with the facts and circumstances of the case and the theory proposed by appellants, indicated that from her knowledge of procedure, that the way the death certificate was filled out signifies it was a natural death. Contrary to appellants' contention, Dr. Case does not conclude as a matter of law that it was a natural death.

Moreover, she based her testimony on facts that were already within the jury's purview since Dr. Crafts had already testified prior to Dr. Case. It did not require a great leap of logic for the jury to conclude that if a doctor signs a death certificate, indicating the belief that the death fails to meet the statutory criteria to be referred to the medical examiner, then it is a natural death. We discern no prejudice by the admission of Dr. Case's cumulative testimony that warrants reversal. Point denied.

In their final point appellants claim instructional error. First, appellants allege the trial court erred in giving verdict directing instruction No. 5 patterned after MAI 22.03 which reads:

Your verdict must be for Plaintiffs if you believe:

First, there was a load lock sticking out of the load lock rack on Defendant's dock, and as a result, the dock was not reasonably safe, and

Second, Defendant knew or by using ordinary care should have known of this condition, and

Third, Defendant failed to use ordinary care to remove it, and

. Fourth, as a direct result of such failure, William Wailand died.

Appellants challenge paragraph "Fourth" of this MAI instruction arguing that the "direct result" language placed a higher burden of proof than Missouri law mandates, by requiring them to show a direct causal relationship between respondent's negligence and Wailand's death.

■■■ We disagree. Here the court gave a verdict director taken from MAI 22.03 [1989 Revision]. This instruction is designed for cases where plaintiff is injured on defendant's premises as a result of defendant's negligent failure to keep the area reasonably safe. This is exactly the situation presented here. Appellants allege respondent was negligent in the storing of its load locks, and that this negligence caused Wailand to trip over a load lock protruding from the rack. Appellants complain that the ensuing fall hyperextended his neck, and caused the stroke which ultimately resulted in his death. Based on the facts of this case, MAI 22.03 was the proper instruction. When an MAI instruction is applicable in a particular case, its use is mandatory. Rule 70.02(b); *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 224 (Mo. App.1990). Since the instruction follows the language of MAI 22.03 exactly, this court has no power to declare the submission of the MAI instruction erroneous. *Biever v. Williams*, 755 S.W.2d 291, 294 (Mo.App. 1988).

Next, appellants pinpoint trial court error in its refusal of their tendered Verdict Directing Instruction No. A. This instruction, modified by MAI 19.01, is almost identical to Instruction No. 5, the verdict director actually given, except that paragraph "Fourth" is changed to, "Fourth, such failure directly caused or *directly contributed to cause the death of William Wailand.*" (Emphasis ours) Appellants' proposed instruction is modeled after MAI 19.01 [1986 Revision].

The patterned instruction expressly states that MAI 19.01 is designed for use in cases "involving multiple causes of damage" where the "direct result ... language might be misleading." In these situations, MAI 19.01 affords plaintiffs the option of substituting one of the two paragraphs "Third" of MAI 19.01. The two options available are:

Third, such negligence directly caused or directly contributed to cause damage to plaintiff. or

Third, such negligence either directly caused damage to the plaintiff or combined with the [acts of (here describe another causing damage)] [condition of the (here describe product)] to directly cause damage to the plaintiff.

These optional paragraphs alleviate jury confusion in making the determination which party caused the damage when the MAI verdict director contains the "direct result" language, and there are multiple parties who may have contributed to cause the damage.

■■■ A prerequisite for the use of MAI 19.01 and either of the two options available requires there to be two or more causes of damage. *Eagleburger*, 794 S.W.2d at 223. Appellants assert that Wailand's preexisting arteriosclerosis condition made him more susceptible to a stroke, constituting a cause of damage within the meaning of MAI 19.01. Such argument is without merit. Susceptibility is not causation.

Appellants cite numerous cases where the courts found MAI 19.01 applicable and plaintiffs had made allegations against more than one defendant as causing or contributing to cause damage.[5] We do not consider these cases applicable to the case at bar. The cases relied on by appellants involved joint tortfeasors where it was unclear which party ultimately caused the damage. In the present case, respondent was the only party against whom allegations of negligence were made. No one else could have conceivably contributed to cause Wailand's death. Therefore, the "direct result" language of MAI 22.03 was appropriate, and MAI 19.01 was not applicable.

**5.** *Hagen v. Celotex Corp.*, 816 S.W.2d 667 (Mo. banc 1991); *Menschik v. Mid–America Pipeline Co.*, 812 S.W.2d 861 (Mo.App.1991); *Honey v. Barnes Hospital*, 708 S.W.2d 686 (Mo.App.1986).

Moreover, the language of MAI 19.01 clearly intends for the modification to apply to situations where more than one party's actions may be responsible for a plaintiff's damages. The Notes on Use for 19.01 provides that "[t]hese modifications may be used whether or not *another* causing damage is a party." (emphasis ours) Also, the second modifier option of MAI 19.01 states: "Third, such negligence either directly caused damage to plaintiff or combined with the [acts of] (here describe *another* causing damage) ... to directly cause damage to plaintiff." (emphasis ours) Therefore, based on the express language of MAI 19.01, this modifying instruction is clearly intended for those cases where more than one party's actions are involved in contributing to cause damage. Such an instruction was unwarranted here. Point denied.

We affirm the judgment in all respects.

GARY M. GAERTNER, C.J., and SMITH, J., concur.