**Jacqueline HIGBY, Plaintiff/Appellant,**

v.

**Scott WEIN, Defendant/Respondent.**

**No. 74611.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 6, 1999.

William K. Meehan, P.C., William K. Meehan, Clayton, for appellant.

Kortenhof & Ely, P.C., Kenneth M. Lander, St. Louis, for respondent.

MARY K. HOFF, Presiding Judge.

Jacqueline Higby (Appellant) appeals from the trial court's judgment, entered after a jury trial, in favor of Scott Wein (Respondent) in this negligence action for personal injuries allegedly sustained as the result of a motor vehicle accident. We reverse and remand for new trial because the verdict directing instruction was erroneous in light of the evidence of multiple causes of Appellant's injuries.

1. The verdict directing instruction proferred by Appellant and refused by the trial court stated:

**INSTRUCTION NO. B**
Your verdict must be for [Appellant] if you believe:

The parties' accident occurred early in the morning of April 4, 1996. As a result of this accident, Appellant allegedly sustained neck and right shoulder injuries for which she sought treatment from a chiropractor, Scott Cheatwood, D.C., and an orthopedic surgeon, Herbert Allen Haupt, M.D.

Appellant filed a Petition seeking damages for Respondent's negligence related to the accident. In relevant part, Appellant alleged that, as a result of Respondent's negligence, she suffered "serious and permanent personal injuries to her head, neck and right shoulder; ... [and] impingement syndrome and adhesive capsulitis of her right shoulder requiring ... surgical correction thereof"; had incurred $6,500 in medical expenses; and would incur future medical expenses for treatment of her right shoulder. In his answer, Respondent denied the allegations, except the allegation he was a resident of St. Louis County, and did not set forth any affirmative defenses.

Testimony and medical records introduced during trial disclosed that Appellant had a pre-existing injury to her right shoulder for which she was receiving chiropractic treatment from Dr. Cheatwood. The trial court refused to give Appellant's proferred verdict directing instruction, which was modeled after MAI 17.16 and modified by MAI 19.01.[1] Instead of that proferred instruction, the trial court gave the following verdict directing instruction:

**INSTRUCTION NO. 7**

Your verdict must be for [Appellant] if you believe:

First, [Respondent]'s automobile came into collision with the rear of [Appellant]'s automobile, and
Second, [Respondent] was thereby negligent, and
Third, such negligence directly caused or directly contributed to cause damage to [Appellant].

First, [Respondent]'s automobile came into collision with the rear of [Appellant]'s automobile, and

Second, [Respondent] was thereby negligent, and

Third, as a direct result of such negligence, [Appellant] sustained damage.

The jury returned a verdict in favor of Respondent and the trial court entered a judgment in accordance with that verdict. Appellant filed a motion for new trial in which she argued, in relevant part, that the trial court erred in refusing Appellant's proferred verdict directing instruction and in giving Instruction No. 7. The trial court denied the motion for new trial. This appeal followed.

■ In her sole point on appeal, Appellant urges the trial court erred in refusing her proferred verdict directing instruction with the MAI 19.01 modifying language. Appellant argues the modifying language should have been used because the evidence clearly pointed to two separate causes of injury and the jury was improperly instructed they could only find for Appellant if they believed her damages were the direct result of the April 4, 1996, motor vehicle accident.

The trial court refused use of the MAI 19.01 modifying language upon finding the language was appropriate only where more than one person or more than one act occurs at the time of plaintiff's injury and it is unclear who or what actually caused the injury. Appellant contends the undisputed evidence of her pre-existing right shoulder injury constituted evidence of a cause of Appellant's shoulder injuries additional to the accident, and therefore required, upon Appellant's request, modification of the verdict directing instruction by language set forth in MAI 19.01.

■ We review a trial court's refusal to submit an instruction for abuse of discretion. *Quinn v. Lenau,* 996 S.W.2d 564, 568 (Mo.App. E.D. 1999). In considering the propriety of a proferred instruction we review the evidence in the light most favorable to the submission of the instruction, keeping in mind a party is entitled to an instruction on any theory supported by the evidence. *Kauzlarich v. Atchison, Topeka, and Santa Fe Ry. Co.,* 910 S.W.2d 254, 258 (Mo. banc 1995); *Shop 'N Save Warehouse Foods, Inc. v. Soffer,* 918 S.W.2d 851, 862 (Mo.App. E.D.1996); *Kim v. Conway & Forty, Inc.,* 772 S.W.2d 723, 727 (Mo.App. E.D.1989). "To be charged to the jury, an issue submitted in an instruction 'must be supported by substantial evidence from which the jury reasonably could find [the] issue.'" *Kauzlarich,* 910 S.W.2d at 258 (quoting *Egelhoff v. Holt,* 875 S.W.2d 543, 548 (Mo. banc 1994)). We will not reverse a verdict due to instructional error, including the refusal to give an instruction, unless the error was prejudicial. *Linton v. Missouri Highway and Transp. Comm'n,* 980 S.W.2d 4, 10 (Mo.App. E.D.1998).

In *Kauzlarich,* the Missouri Supreme Court found failure to give a proferred mitigation of damages instruction in a case under the Federal Employers' Liability Act (FELA) was reversible error, in relevant part, because defendant was entitled to such an instruction as mitigation of damages was a substantive matter under federal law; defendant was prejudiced by its omission in that the jury awarded plaintiff damages; and the evidence supported such an instruction. *Kauzlarich,* 910 S.W.2d at 257–58. Relying on the analysis of the Supreme Court in *Kauzlarich,* we find this Appellant was entitled, upon request, to the modification language in MAI 19.01, the evidence supported such an instruction, and Appellant was prejudiced by its omission.

MAI 19.01 provides as follows:

**19.01 [1986 Revision] Verdict Directing Modification – Multiple Causes of Damage**

In a case involving two or more causes of damage, the "direct result" language

of paragraph Third of verdict directing instructions such as 17.01 and 17.02 might be misleading. In such cases plaintiff, at his option, may substitute one of the following:

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

Third, such negligence either directly caused damage to plaintiff or combined with the [acts of *(here describe another causing damage* )] [condition of the *(here describe product* )] to directly cause damage to plaintiff.

(footnotes omitted). The Committee Comment to this instruction notes that

[i]n 1986, the title of this instruction was changed from "Verdict Directing Modification – Joint Tortfeasors" to "Verdict Directing Modification – Multiple Causes of Damage" in order to avoid confusion and allow this modification in cases in which there are multiple causes of damage *but which may not involve another party or tortfeasor.*

Committee Comment (1995 New) (emphasis added). Prior case law authorizes use of the modifications set forth in MAI 19.01 in cases where multiple tortfeasors may have caused damage to a plaintiff, whether or not all tortfeasors are before the court at the time of trial. *Menschik v. Mid-America Pipeline Co.,* 812 S.W.2d 861, 866 (Mo.App. W.D.1991); *Eagleburger v. Emerson Elec. Co.,* 794 S.W.2d 210 (Mo.App. S.D.1990) (en banc). The question before us, however, is whether these modifications must be used, at a plaintiff's request, when the evidence reveals only a pre-existing injury, and not either a tortfeasor or another event contemporaneous with or subsequent to the allegedly negligent conduct, may be another cause of plaintiff's injury.

Respondent relies on this Court's decision in *Wailand v. Anheuser Busch, Inc.,* 861 S.W.2d 710 (Mo.App. E.D.1993), to support his position that the trial court properly refused to allow use in this case of the modification language of MAI 19.01.

We find that case both distinguishable and unpersuasive in light of the Western District's recent decision in *Snelling v. Gress,* 996 S.W.2d 538 (Mo.App. W.D. 1999), which relied on *Carlson v. K–Mart Corp.,* 979 S.W.2d 145 (Mo. banc 1998).

In *Wailand,* the decedent fell and struck his head while on defendant's property. *Wailand,* 861 S.W.2d at 712. Decedent's survivors alleged the fall caused a stroke that eventually took decedent's life. *Id.* We upheld the trial court's refusal to modify the verdict directing instruction by MAI 19.01. *Wailand,* 861 S.W.2d at 717–18. We expressly stated there must be two or more causes of damage to plaintiff before MAI 19.01 and either of its options may be used. *Id.* at 717. Decedent's survivors in *Wailand* argued that decedent's "preexisting arteriosclerosis condition made him more susceptible to a stroke." *Id.* We concluded "[s]usceptibility is not causation." *Id.* Because the case did not involve more than one potential cause of decedent's death, MAI 19.01 clearly did not apply and the discussion of when it may apply when two or more causes of plaintiff's damage exist of record is not controlling in this case where the record reveals more than one cause of Appellant's injuries.

In *Snelling* the Western District found it was reversible error not to modify a damage instruction to comport with the verdict directing instruction that had been modified by MAI 19.01 in a personal injury action arising out of an accident involving only plaintiff's and defendant's motor vehicles. *Snelling, supra.* Plaintiff alleged that, as a result of the accident, she sustained injuries to her neck, back, the index finger of her left hand, and nerves. *Snelling,* at 539. The court noted the evidence at trial revealed prior injuries to and treatment for plaintiff's neck and shoulder, lower back, left biceps and shoulder, as well as three post-accident injuries to her back, neck and shoulder. *Id.* The damage instruction required the jury to "compensate

Plaintiff for any damages you believe she sustained and is reasonably certain to sustain in the future as *a direct result of* the occurrence mentioned in the evidence." *Id.* at 540 (emphasis added). The verdict directing instruction stated, in relevant part, that the jury had to find the negligence *"directly caused or directly contributed to cause* damage to Plaintiff." *Id.* (emphasis added). On appeal, plaintiff urged the "direct result" language of the damage instruction conflicted with the verdict directing instruction. *Id.* The Western District concluded the discrepancy in the verdict directing and damage instructions "engendered confusion for the jury prejudicing" plaintiff and required reversal and remand for a new trial on the issue of damages. *Id.* at 540.

While the *Snelling* case specifically involved a conflict between "result" and "cause" language used in the verdict directing and damage instructions, an issue we are not facing here, the importance of *Snelling* to the present case is its consideration of a pre-existing injury as a cause, additional to defendant's alleged negligence, supporting the use of the modification language of MAI 19.01. We therefore conclude Appellant, at her request, was entitled to use of the MAI 19.01 modification language if the evidence showed a preexisting injury in Appellant's right shoulder.

Viewing the evidence in the light most favorable to the proferred instruction, we find the record reveals the following.[2] There is no dispute that, between February 17, 1996, and April 3, 1996, Appellant was treated more than ten times by Dr. Cheatwood for neck and right shoulder problems arising out of a "pull up" in December 1995 and a few other activities occurring before the accident.[3] Dr. Cheat-

wood's records specifically reflect that on April 3, 1996, the day before the accident, Appellant had restricted range of motion in the right shoulder.

On April 4, 1996, Appellant was stopped on the northbound ramp exiting from Interstate 55 to Reavis Barracks Road. Respondent was behind Appellant and initially stopped his vehicle without contacting Appellant's vehicle. Then Respondent's foot slipped off the brake and his vehicle rolled into Appellant's vehicle.

Appellant testified she believed the accident caused greater injury to her right shoulder, and that the accident and its trauma made her right shoulder worse than immediately before the accident. After the accident Appellant sought chiropractic treatment from Dr. Cheatwood for neck and shoulder injuries she allegedly sustained in the accident. When that treatment did not provide relief, Appellant saw Dr. Haupt. Dr. Haupt performed surgery on Appellant's right shoulder in July 1996. In Dr. Cheatwood's opinion, the pain and condition of Appellant's right shoulder were worse after the accident than before the accident.

Dr. Haupt first saw Appellant on May 14, 1996. Appellant told him of a history of complaints about her shoulder dating back to December 1995, with a strain from a single pull-up and persistent discomfort not relieved by chiropractic care. She also told him of the April 1996 car accident "causing a stress to the shoulder with secondary worsening of the pain ... described as being generalized about the shoulder with significant loss of range of motion noted as of March of [1996] ... [and no] resolution of her complaints" through anti-inflammatory medications. On physical examination of her right shoulder during the first visit, Dr. Haupt no-

2. The only witnesses at trial were Appellant, Dr. Haupt, Dr. Cheatwood, and Respondent.

3. Appellant's testimony and medical records, which Respondent read into the record, reveal Appellant had also received treatment

from other chiropractors in 1993 for low back problems and in 1994 and possibly 1995 for neck problems; and had had a vehicle accident in 1990 resulting in neck and shoulder pain.

ticed "significant loss of range of motion in all planes including abduction [raising the arm upward], external rotation [rotating the arm backward], and internal rotation[, as well as] marked discomfort at the ends of range of motion." The x-rays he took revealed "no acute or chronic injuries about the shoulder [and] were essentially normal looking. . . ." Dr. Haupt concluded Appellant had "adhesive capsulitis, . . . commonly referred to as a frozen shoulder," which can result in gradual loss of "range of motion about the shoulder where [the person] physically cannot raise it, rotate it outward. And at the ends of that range of motion it is quite uncomfortable." He testified there are various causes of adhesive capsulitis, including trauma. Dr. Haupt opined he was "sure that the automobile accident caused some aggravation" of the capsulitis. He further testified that

it's unlikely she will ever regain full motion to her shoulder. Fortunately, the shoulder is one where loss of range of motion is usually easily accommodated by most patients as long as the pain is under control. Unfortunate[ly], her last examination [indicated] her pain wasn't improving.

On cross-examination, Dr. Haupt stated "[i]t's difficult for me to tell you to what degree contribution of the accident played in the need ultimately for the arthroscopic procedure. . . . I suspect it played some aggravating role, but the degree of the role I cannot find."

There was no evidence that any activities or conduct by Appellant after the accident and prior to trial caused her any injury.

This record supports the submission to the jury the issue of whether any negligence of Respondent in the April 4, 1996, motor vehicle accident directly caused *or directly contributed to cause* damage to Appellant's right shoulder additional to Appellant's pre-existing right shoulder injury. Therefore, in light of *Snelling* and the undisputed evidence that Appellant had injured her right shoulder prior to the accident, we conclude Appellant, upon her request, was entitled to modification of the verdict directing instruction in accordance with one of the options available in MAI 19.01.

■ Appellant argues she was prejudiced by the omission of the MAI 19.01 modification language because "[w]ithout the aid of [that] language, it is factually, legally, and theoretically impossible to persuade any jury that a person who has had [preexisting] injuries can be awarded any monetary relief" under circumstances similar to this case. Specifically, Appellant contends allowing a defendant, such as Respondent, to argue a causation other than the motor vehicle accident, while not submitting the possibility of multiple causation as part of the instructions to the jury "create[s] an impossible and unfair burden" in that a jury cannot "be persuaded" to award damages "unless the automobile accident was the sole cause of the injury."

In this case, we cannot determine if the jury verdict was in favor of Respondent because the jury believed there was no negligence on the part of Respondent that caused Appellant's subsequent medical condition or if the jury believed the automobile accident had to be the only direct cause of Appellant's subsequent medical condition. Therefore, we find Appellant was prejudiced by the trial court's failure to give a verdict director modified by MAI 19.01 language, as requested by Appellant. The record reveals evidence to support a finding that any negligence resulting in the car accident may have contributed to Appellant's right shoulder injury and its treatment after the accident. In light of the language of the submitted jury instruction, without the MAI 19.01 modification, the jury was not clearly instructed that any negligence of Respondent in the motor vehicle accident that *contributed to cause* further injury to Appellant's right shoulder injury and its subsequent treatment would entitle Appellant to an award of damages.

 

This prejudiced Appellant because the jury may not have understood it could award Respondent damages for aggravation of Appellant's pre-existing right shoulder injury.

Judgment reversed and case remanded for new trial.[4]

GARY M. GAERTNER and RHODES RUSSELL, JJ., concur.

---

4. If the evidence at retrial supports the modification of the verdict directing instruction with MAI 19.01 language, and such language is requested by Appellant, then both the verdict directing and damage instructions must be consistent under *Snelling* and *Carlson, supra.*