# United States Court of Appeals
### For the Eighth Circuit
_____

No. 22-1375
_____

Ian Wallace

*Plaintiff - Appellant*

v.

Pharma Medica Research, Inc.

*Defendant - Appellee*

Tris Pharma, Inc.; Roxane Laboratories, Inc.; Hikma Labs, Inc.; West-Ward Columbus, Inc.

*Defendant*s
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: June 15, 2023
Filed: August 14, 2023
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.
_____

KELLY, Circuit Judge.

Ian Wallace contracted hepatitis C after participating in drug trials and screenings at Pharma Medica Research, Inc. (Pharma Medica) and other companies.

He sued Pharma Medica for negligence, and a jury found in favor of Pharma Medica. Challenging the jury instructions and the district court's evidentiary rulings, Wallace filed a motion for a new trial, which the district court[1] denied. Wallace appeals, and we affirm.

I.

In 2016, Ian Wallace participated in several drug trials and screenings for compensation. As relevant to this appeal, he participated in two studies for Pharma Medica, a company that conducts clinical drug trials. The first study took place at Pharma Medica's facility in St. Charles, Missouri, from March 2 to April 23, during which Wallace's blood was drawn about 50 times. The second study took place in the same facility from May 25 through June 14, during which Wallace's blood was drawn an additional 47 times.

But Wallace also participated in studies conducted by other companies that are not parties to this lawsuit. On February 26—one week prior to his first Pharma Medica study—Wallace completed a study conducted by BioPharma Services. During the course of that BioPharma study, Wallace's blood was drawn 31 times. Then, between Wallace's first and second Pharma Medica studies, he was screened by two other companies, Medpace Clinical Pharmacology Unit and Spaulding, and had his blood drawn a total of 3 times.

Wallace became ill and went to the hospital on June 25, 2016. A blood test confirmed that Wallace had contracted hepatitis C, a blood-borne disease. Wallace sued Pharma Medica, asserting that he had contracted the disease "during the [Pharma Medica] blood drawing process." He claimed negligence based on specific acts or omissions by Pharma Medica (specific negligence), including Pharma

___

[1]The Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

Medica's failure to use sterile equipment and its failure to test its employees, who handled the equipment and drew blood from participants, for infectious diseases. And he also claimed negligence based on res ipsa loquitor (res ipsa loquitor negligence).

A five-day jury trial was held. Wallace's expert witness testified that based on the timing of when Wallace fell ill, he believed the source of Wallace's infection was more likely than not a contaminated needle used at Pharma Medica's facility, but the expert acknowledged he did not know which particular needle or blood draw caused the infection. Wallace testified about his experience in the Pharma Medica studies and suggested their "chaotic" environment led to a contaminated needle pricking him, but he never saw anyone at Pharma Medica use a dirty needle on him or any other participant. Pharma Medica, on the other hand, disputed that it was the cause of Wallace's infection. It presented evidence that it maintained safety protocols and used only sterile instruments on study participants. Pharma Medica also introduced expert testimony indicating that, based on the incubation period of hepatitis C, Wallace could have contracted the disease prior to the two Pharma Medica studies he participated in.

At the close of the evidence, Pharma Medica moved for a directed verdict on Wallace's specific negligence claim. The district court granted the motion, concluding there was insufficient evidence to support the specific negligence allegations.[2] Therefore, only the negligence claim under a res ipsa loquitor theory was submitted to the jury.

The jury returned a verdict in favor of Pharma Medica. Wallace filed a motion for a new trial, which the district court denied. Wallace now appeals.

---

[2]Wallace does not appeal the district court's grant of a directed verdict for Pharma Medica on his specific negligence claim.

## II.

We review the district court's denial of a motion for a new trial "for a clear abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." Bamford, Inc. v. Regent Ins. Co., 822 F.3d 403, 410 (8th Cir. 2016) (citation omitted). A new trial is appropriate only when the "aggrieved party proves prejudice, meaning that the result at trial would have been different if not for the district court's error." Acuity v. Johnson, 776 F.3d 588, 596 (8th Cir. 2015). On appeal, Wallace contends that a new trial is warranted because of errors in (1) the district court's res ipsa loquitor instruction (Jury Instruction 19) and (2) the admission of testimony from Pharma Medica's expert witnesses Dr. Andrew Aronsohn and phlebotomist Nancy Glasgow-Roberts, and from Pharma Medica executive Dr. Shabaz Khan.

## A.

In assessing jury instructions, we determine whether they, "taken as a whole and viewed in light of the evidence and the applicable law, fairly and adequately submitted the issues in the case to the jury." Barkley, Inc. v. Gabriel Bros., Inc., 829 F.3d 1030, 1042 (8th Cir. 2016) (quoting Fogelbach v. Wal–Mart Stores, Inc., 270 F.3d 696, 699 (8th Cir. 2001)). In diversity cases, "the instructions must fairly and adequately represent the law of the forum state," here, Missouri. Smith v. Chase Grp., Inc., 354 F.3d 801, 808 (8th Cir. 2004). The instructions "need not be 'technically perfect or even a model of clarity,'" and the district court has "broad discretion in formulating" them. Wurster v. Plastics Grp., Inc., 917 F.3d 608, 614 (8th Cir. 2019) (quoting Brown v. Sandals Resorts Int'l, 284 F.3d 949, 953 (8th Cir. 2002)); see Davis v. White, 858 F.3d 1155, 1160 (8th Cir. 2017) ("A district court's decision . . . to give a particular instruction [is] reviewed for abuse of discretion." (cleaned up and citation omitted)). Any errors regarding the instructions "will not demand reversal unless they result in prejudice to the appealing party." Wilson v. City of Des Moines, 442 F.3d 637, 644 (8th Cir. 2006) (quoting Smith, 354 F.3d at 808).

-4-

"*Res ipsa loquitor* is a rule of evidence that permits the jury to infer from circumstantial evidence that the plaintiff's loss or injury was caused by the defendant's negligent act." Green v. Plaza in Clayton Condo. Ass'n, 410 S.W.3d 272, 282 (Mo. Ct. App. 2013). Under Missouri law, to establish res ipsa loquitor negligence, a plaintiff must prove:

> (1) the incident would not ordinarily occur in the absence of negligence; (2) the incident was caused by an instrumentality under the defendant's control; and (3) the defendant has superior knowledge about the cause of the incident.

Id. (citing Sides v. St. Anthony's Med. Ctr., 258 S.W.3d 811, 814 (Mo. banc 2008)).

Wallace raises two challenges to Jury Instruction 19. He first argues that the instruction required him to prove more than what is necessary under Missouri law. Jury Instruction 19 allowed the jury to find for Wallace if it found that Pharma Medica "controlled, [or] had the right to control or manage the persons and instrumentalities, used to draw [Wallace's] blood during the relevant time period in 2016." Wallace argues that the use of the plural terms "persons and instrumentalities" erroneously required him to prove that Pharma Medica controlled the employees and needles of the other non-party companies, not just the employees and needles of Pharma Medica. He contends that this requirement was "illogical" and "placed an impossible burden" on him.

But in Jury Instruction 19, the phrase "persons and instrumentalities" is cabined by the phrase "during the relevant time period in 2016." At trial, the incubation period for hepatitis C was a contested issue. Indeed, as Wallace points out in his appellate brief, Pharma Medica claimed a "six month[] incubation period was possible while [Wallace]'s expert testified to a two to twelve week period" at trial. The incubation period was relevant to the parties' theories because there was no evidence establishing which particular contaminated needle was the source of the hepatitis C. If the incubation period was shorter, as Wallace argued to the jury, then

-5-

the more likely it would be that he contracted the disease from his more recent drug trials—that is, Pharma Medica's drug trials. If, in contrast, the incubation period was longer, then the likelihood that Wallace contracted his infection during a blood draw conducted by a different company increases. Accordingly, the jury was tasked with determining the "relevant time period" in which Wallace contracted the disease, and then determining whether, during that time period, Pharma Medica controlled or had the right to control the probable sources that could have infected him. See Sides, 258 S.W.3d at 814 ("The [res ipsa loquitor] doctrine is used in cases in which it is not clear exactly what caused an injury, but all the probable causes are within the control or right to control of defendant."). In light of the evidence presented at trial and the instruction in its entirety, the plural reference to "persons" and "instrumentalities" did not render the charge to the jury unfair or inadequate.

Wallace next argues that the jury was erroneously instructed on causation. Jury Instruction 19 permitted the jury to find for Wallace if it found, "from the fact of [transmission of hepatitis C from a blood draw] and the reasonable inferences therefrom, such occurrence was directly caused by [Pharma Medica]'s negligence." Wallace argues that this instruction was improper because it failed to instruct the jury on "multiple causes." He contends he was entitled to a multiple-cause instruction[3] because Pharma Medica raised "as affirmative defenses" the fault of third parties; Wallace's failure to mitigate his damages; and Wallace's "own fault" in contributing to the damage. But the multiple-cause instruction is not warranted unless there are "two or more *causes* of damage to [the] plaintiff," and none of Wallace's arguments persuades us that he was entitled to this instruction. Higby v. Wein, 996 S.W.2d 95, 98 (Mo. Ct. App. 1999) (emphasis added); see also Wailand v. Anheuser Busch Inc., 861 S.W.2d 710, 717 (Mo. Ct. App. 1993).

---

[3]The multiple-cause instruction that Wallace pursued, see Missouri Approved Instructions (MAI) 19.01, would have allowed the jury to find for Wallace if it determined Pharma Medica "directly caused or *directly contributed to cause*" damage to Wallace. Id. (emphasis added).

-6-

There was only one cause of damage that the parties focused on at trial—a contaminated instrument that infected Wallace during a blood draw. Neither party presented evidence to the jury suggesting that there were two or more causes of Wallace's hepatitis C infection. Although it is true, as Wallace contends, that Pharma Medica suggested other companies could have been the source of Wallace's infection, Pharma Medica did not claim those companies were *additional* causes of damage. Rather, Pharma Medica suggested to the jury that one of those companies was the *alternative* cause of Wallace's infection—in lieu of Pharma Medica. As only one cause of the infection was at issue, the district court did not err by declining to give the jury a multiple-cause instruction. Likewise, to the extent Pharma Medica raised Wallace's failure to mitigate his damages at trial, failure to mitigate is not a "cause" of damage that warrants a multiple-cause instruction. See Hurst v. Kansas City, Mo. Sch. Dist., 437 S.W.3d 327, 336 n.4 (Mo. Ct. App. 2014) (rejecting the plaintiff's argument "that she was entitled to the MAI 19.01 modification" based on the defendant's failure-to-mitigate defense because "[m]itigation of damages is a principle that occurs after breach and injury have been inflicted" and therefore "cannot also constitute a cause of damage" (citation omitted)), abrogated on other grounds by S.B. No. 43.

Wallace also argues that Pharma Medica raised his "own fault" as a contributing cause, directing us to two places in the trial record: where Pharma Medica presented evidence about Wallace's delay in getting medical treatment and his delay in seeking employment after he was treated.[4] But these two instances are, as he himself acknowledges, related to Pharma Medica's failure-to-mitigate-

---

[4]The third example Wallace raises is that "the jury heard testimony that [he] slept in a dark room during the blood draw process." But Wallace presented that evidence in order to support his argument that Pharma Medica was negligent in the manner in which it conducted its blood draws. We see nothing in the trial record suggesting that Wallace sleeping in a dark room was raised as an additional cause of damage.

damages defense. And as discussed above, a plaintiff's failure to mitigate damages does not constitute a cause of damage.

In sum, we conclude the district court did not abuse its discretion in formulating the jury instructions here. See Wurster, 917 F.3d at 614.

## B.

Wallace next challenges several of the district court's evidentiary rulings at trial. Specifically, he contends that the district court erred by admitting the testimony of Dr. Aronsohn, Glasgow-Roberts, and Dr. Khan, despite Pharma Medica's violations of Federal Rule of Civil Procedure 26(e) and of a prior district court order.[5] "We afford the district court broad discretion in its evidentiary rulings, in deference to its familiarity with the details of the case and its greater experience in evidentiary matters." United States v. Mast, 999 F.3d 1107, 1111 (8th Cir. 2021) (cleaned up and citation omitted); see also Gareis v. 3M Co., 9 F.4th 812, 816 (8th Cir. 2021) ("We review a district court's evidentiary rulings for an abuse of discretion."). We will grant a new trial based on erroneously admitted expert testimony only if the party claiming error shows prejudice. Gareis, 9 F.4th at 817 (stating that to show prejudice, the party must establish that the challenged evidence "had a substantial influence on the jury's verdict" (cleaned up)); see also United States v. STABL, Inc., 800 F.3d 476, 487 (8th Cir. 2015).

Wallace argues that the district court should have struck the expert testimony of Dr. Aronsohn and Glasgow-Roberts because Pharma Medica failed to timely disclose that it had sent the two witnesses certain documents, like the deposition transcript of Wallace's expert witness and Wallace's hepatitis C testing records, for review before they testified at trial. See Fed. R. Civ. P. 26(e) (instructing parties to timely "supplement or correct" expert witness disclosures required by Rule

---

[5]Wallace also suggests that the district court exhibited bias by granting more evidentiary rulings for Pharma Medica than it did for him. But we do not infer bias simply from a tally of rulings in favor of one party versus the other.

26(a)(2)(B), which includes the disclosure of the "basis and reasons for" an expert's opinion); Fed. R. Civ. P. 37(c)(1) (providing that "[i]f a party fails to provide information" as required by Rule 26(e), "the party is not allowed to use that information" unless "the failure was substantially justified or is harmless"). But even assuming Pharma Medica violated Rule 26(e), Wallace fails to articulate how Pharma Medica's nondisclosures were prejudicial. Dr. Aronsohn's opinion did not change after he reviewed the nondisclosed documents. And his trial testimony was consistent with his deposition testimony, which was given before he received the nondisclosed documents. There was no "unfair surprise" to Wallace, then, when Dr. Aronsohn's opinion remained unchanged. See Davis v. U.S. Bancorp., 383 F.3d 761, 765 (8th Cir. 2004).

Similarly, Wallace fails to explain how Glasgow-Roberts's review of the nondisclosed documents affected her trial testimony. Her trial testimony, like Dr. Aronsohn's, remained largely consistent even after she received the documents. Although Wallace flags one inconsistency between Glasgow-Roberts's deposition and trial testimony—Glasgow-Roberts said it took "3–5 minutes" on average to draw blood during her deposition but later testified at trial that "2–3 minutes" for a blood draw was feasible—Wallace does not explain how the nondisclosed documents caused that inconsistency. Indeed, when Wallace cross-examined Glasgow-Roberts, she testified that the additional documents she received from Pharma Medica had not altered her expert opinion, and she explained that the inconsistency in her testimony was due to her contemplation of different blood-draw settings when answering the questions. Further, regardless of why her testimony was different, Wallace is ultimately unable to show how this difference substantially influenced the jury's verdict. See Gareis, 9 F.4th at 817.

Finally, Wallace argues that Dr. Khan was impermissibly allowed to testify at trial that he believed Pharma Medica did not test its employees for hepatitis C because Missouri law prohibited it from requiring such testing. The district court had previously struck Dr. Khan's deposition testimony on that subject, reasoning that it was an incorrect statement of Missouri law. But Wallace did not move to

-9-

strike or seek a curative instruction for Dr. Khan's comment at trial, which Dr. Khan made while being cross-examined by Wallace.[6]  See McKnight ex rel. Ludwig v. Johnson Controls, Inc., 36 F.3d 1396, 1407 (8th Cir. 1994) ("Without an objection and a proper request for relief, the matter is waived and will receive no consideration on appeal absent plain error.").  Further, even if this argument had been preserved, Wallace has not established that Dr. Khan's improper comment prejudiced him. Pharma Medica's testing procedures and the laws governing them were only relevant to Wallace's specific negligence claim, which the jury did not reach because the district court granted a directed verdict on that claim.  Wallace fails to explain how Dr. Khan's comment had any bearing on the remaining res ipsa loquitor-based claim submitted to the jury.  Because Wallace has failed to articulate any prejudice, we decline to grant a new trial on this ground.  See Gareis, 9 F.4th at 817.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____

---

[6]Instead, Wallace's counsel sought to rebut Dr. Khan, stating, "Well, sir, I am an attorney, and that is not correct."  Pharma Medica objected to counsel's interjection.  The district court sustained the objection and told counsel to "move on" with questioning.  To the extent Wallace challenges the district court's decision to sustain Pharma Medica's objection, he articulates no argument as to why that decision was erroneous or prejudicial.