# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-4571

_____

Susan Wengert, formerly known as Susan McConnell

*Plaintiff - Appellant*

v.

Theresa A. Rajendran, Personal Representative of Estate of Timothy McConnell, deceased and Trustee of the Timothy McConnell Trust estate of, Timothy McConnell; Mark Swanson, Members of the Majors Plastics, Inc., Employee Stock Ownership Plan; Michael Herzog, Members of the Majors Plastics, Inc., Employee Stock Ownership Plan; Jay Van Roy, Members of the Majors Plastics, Inc., Employee Stock Ownership Plan

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 15, 2017
Filed: April 3, 2018

_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Susan Wengert sued the members of the plan-administrative committee of the Majors Plastics, Inc. Employee Stock Ownership Plan; the personal representative of

the Estate of Timothy McConnell; and the trustee of the Timothy McConnell Trust. The district court[1] granted summary judgment against Wengert. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Wengert's husband was Timothy J. McConnell. He filed for divorce. He was a participant in an employee-benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. Under the plan, the amount in a participant's account is an "Accrued Benefit." McConnell's Accrued Benefit was $2,721,739.37. On Friday, September 12, 2014, McConnell requested a lump-sum distribution of the Accrued Benefit to his trust. The plan-administrative committee wired the funds that same day. McConnell died on Sunday. The trust did not receive the funds until Monday.

McConnell was still married to Wengert when he died. The plan defines a "Beneficiary" as a "Participant's surviving spouse." The plan says: "A pay-out of the vested Accrued Benefit . . . shall satisfy all obligations of the Plan . . . to [the] Participant or his Beneficiary." Wengert submitted a claim for benefits. The plan-administrative committee denied it:

> McConnell had no Accrued Benefit (i.e., Accounts) under the Plan. Therefore, there is no benefit for [Wengert] to claim from the Plan. . . . Since Mr. McConnell had no Accrued Benefit under the Plan, [Wengert] cannot be a Beneficiary of the Plan, and therefore has no basis to make a claim for benefits.

---

[1] The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska.

II.

Wengert believes she should receive the $2,721,739.37 as McConnell's beneficiary. She suggests that the Friday wire transfer is irrelevant because the trust did not receive the funds until after McConnell's death. The plan-administrative committee disagreed:

> For purposes of the Plan, the relevant inquiry is not when funds are received by a Participant, but rather when funds are transferred out of the Plan. At the point of transfer of the remaining Accrued Benefit in a Participant's account, the Plan has satisfied all obligations to the Participant or his Beneficiary. In the present case, the full Accrued Benefit remaining in Mr. McConnell's account under the Plan was disbursed via wire transfer transmitted on September 12, 2014. At that time, the funds were no longer held by the Plan and therefore Mr. McConnell no longer had any Accrued Benefit in the Plan.

A.

The district court concluded that the plan gives the committee "broad discretionary authority" to determine eligibility for benefits. "Where an ERISA plan grants the administrator discretion to determine eligibility for benefits and to interpret the plan's terms, courts must apply a deferential abuse-of-discretion standard of review." *Green v. Union Sec. Ins. Co.*, 646 F.3d 1042, 1050 (8th Cir. 2011), *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The district court applied an abuse-of-discretion standard.

Wengert objects to the abuse-of-discretion standard because "[t]here is no discretionary act at issue." She believes this case presents only a legal question requiring de novo review: "was a wire transfer completed before [McConnell's]

death by the initiation of the wiring process without its completion through receipt and acceptance by the recipient bank[?]"

Wengert asserts: "The remedy sought is not under ERISA. . . . This is not a case to determine ERISA benefits, or the identity of the proper beneficiary." But her amended complaint alleges:

> Claims against [the plan-administrative committee] for failure to pay sums due to [Wengert] as [McConnell's] spouse do arise under ERISA.
>
> . . . .
>
> The acts and conduct of the [plan-administrative committee] constitute wrongful denial of [Wengert's] claim and right to all sums of [McConnell] in the Plan. . . . This claim arises under 29 USC § 1132(a)(1)(B).

Claims arising under 29 U.S.C. § 1132(a)(1)(B) are subject to an abuse-of-discretion standard when "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115. Wengert does not challenge the district court's conclusion that the plan grants the plan-administrative committee discretionary authority to determine eligibility for benefits. An abuse-of-discretion standard applies in this case.

B.

"When the district court reviews the administrator's decision for an abuse of discretion, we conduct de novo review of the district court's decision, meaning we also review the administrator's decision for an abuse of discretion." *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 987 (8th Cir. 2014). "The administrator's decision should be affirmed if it is reasonable, meaning it is supported

-4-

by substantial evidence." ***Green***, 646 F.3d at 1050  This court "has catalogued several factors to be considered in the analysis." ***King v. Hartford Life & Acc. Ins. Co.***, 414 F.3d 994, 999 (8th Cir. 2005) (en banc).

> These include "whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan."

***Id.***, *quoting* ***Finley v. Special Agents Mut. Benefit Assoc., Inc.***, 957 F.2d 617, 621 (8th Cir. 1992).  These factors "inform our analysis, but '[t]he dispositive principle remains . . . that where plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own-and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination.'" ***Id.***, *quoting* ***de Nobel v. Vitro Corp.***, 885 F.2d 1180, 1188 (4th Cir. 1989) (alteration in original). "The requirement that the plan administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." ***Id.***, *quoting* ***Jackson v. Metropolitan Life Ins. Co.***, 303 F.3d 884, 887 (8th Cir. 2002).

> Here, the district court concluded:

> Wengert's interpretation of the Plan and the evidence is plausible.  But that is not enough in this ERISA context. . . . Wengert fails to establish that the committee's contrary view is unreasonable under the terms of the Plan, which grants the committee broad discretion to evaluate competing benefit claims.  Though Wengert might prefer a different interpretation of the Plan in general and of the term "distribution" in particular, she has not identified any glaring contradiction or

inconsistency created by the committee's decision, nor any other abuse of discretion.

On appeal, Wengert emphasizes that the plan-administrative committee's decision is inconsistent with Nebraska law: "A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order." **Neb. U.C.C. § 4A-104(a)**. Acceptance did not occur until after McConnell died.

The plan-administrative committee is not bound by state law. *See Neumann v. AT&T Communications, Inc.*, 376 F.3d 773, 779 (8th Cir. 2004) ("Claims arising under . . . 29 U.S.C. § 1132(a), including a claim to recover benefits or enforce rights under the terms of an ERISA plan, implicate . . . complete preemption."). Instead, "the plan text ultimately controls the administrator's obligations in a § 1132(a)(1)(B) action." *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012), *citing CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011); *see also Firestone*, 489 U.S. at 115 ("[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."); **29 U.S.C. § 1132(a)(1)(B)** ("A civil action may be brought by a participant or beneficiary to recover benefits due to him under the *terms of his plan*, to enforce his rights under the *terms of the plan*, or to clarify his rights to future benefits under the *terms of the plan*.") (emphasis added). The plan—not Nebraska law—controls this case.

The plan gives the committee "the sole and exclusive power and discretionary authority . . . [t]o determine the rights of Participants or Beneficiaries to benefits under the Plan, the amount thereof, and the method and time or times of payment of the same." Exercising that authority, the committee determined that under the plan, "the relevant inquiry is not when funds are received by a Participant, but rather when funds are transferred out of the Plan. At the point of transfer of the remaining Accrued Benefit in a Participant's account, the Plan has satisfied all obligations to the

-6-

Participant or his Beneficiary." The evidence showed that the funds were transferred out of McConnell's plan account on Friday, September 12.

The plan-administrative committee reasonably explained its interpretation of the plan and relied on substantial evidence to deny Wengert's claim. "When a plan administrator offers a reasonable explanation for its decision, supported by substantial evidence, 'it should not be disturbed.'" ***Ratliff v. Jefferson Pilot Fin. Ins. Co.***, 489 F.3d 343, 348 (8th Cir. 2007), *quoting **Fletcher–Merrit v. NorAm Energy Corp.***, 250 F.3d 1174, 1180-81 (8th Cir. 2001). Wengert's Nebraska-law argument is a different interpretation of the plan. But "[t]he discretionary decision of a plan administrator is not unreasonable merely because a 'different, reasonable interpretation could have been made.'" ***Id.***, *quoting **Parkman v. Prudential Ins. Co. of Am.***, 439 F.3d 767, 773 (8th Cir. 2006) (per curiam).

In another attempt to apply Nebraska law, Wengert claims that an ERISA "fiduciary always acts arbitrarily and capriciously when it refuses to obey the law." She relies on *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617 (8th Cir. 1998). The *Marolt* case, however, does not involve state law. Instead, the plan administrator there abused its discretion by ignoring a settled principle of ERISA plan interpretation. ***Marolt***, 146 F.3d at 621. That case does not control here. The district court did not err.[2]

*******

The judgment is affirmed.

_____

[2] In her reply brief, Wengert argues that the plan-administrative committee violated a state-court temporary restraining order. She did not raise this argument in her appellant's brief. "It is well settled that we do not consider arguments raised for the first time in a reply brief." ***Navarijo–Barrios v. Ashcroft***, 322 F.3d 561, 564 n.1 (8th Cir. 2003).