# United States Court of Appeals
## For the Eighth Circuit
_____

No. 18-3553
_____

Louis Gareis; Lillian Gareis

*Plaintiffs - Appellants*

v.

3M Company; Arizant Healthcare, Inc.

*Defendants - Appellees*

_____

No. 18-3580
_____

Louis Gareis; Lillian Gareis

*Plaintiffs - Appellees*

v.

3M Company; Arizant Healthcare, Inc.

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 16, 2021
Filed: August 17, 2021
_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Louis and Lillian Gareis are plaintiffs whose case is part of the Bair Hugger multidistrict litigation ("MDL") against 3M Company and Arizant Healthcare, Inc. (collectively, "3M"). *See In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, MDL No. 15-2666 (JNE/DTS), 2019 WL 4394812, at \*2 (D. Minn. July 31, 2019). The district court[1] granted 3M summary judgment on the Gareises' failure-to-warn claim, and a jury returned a verdict for 3M on the Gareises' strict-liability design-defect claim. After the district court entered final judgment in their case, the Gareises appealed, challenging the summary-judgment decision and three evidentiary rulings. For the following reasons, we affirm.[2]

## I.

In December 2015, the Judicial Panel on Multidistrict Litigation centralized the *In re Bair Hugger Forced Air Warming Devices Products Liability Litigation* in the district court for coordinated pretrial proceedings. The Gareises eventually filed a complaint as part of the MDL. They alleged that Louis Gareis underwent hip-replacement surgery in South Carolina, during which he was kept warm with a Bair Hugger, a convective patient-warming device applied to patients during operations to stave off hypothermia-related complications. The Gareises claimed that use of the Bair Hugger caused him to develop a periprosthetic joint infection ("PJI"). The Gareises asserted numerous state-law causes of action against 3M, including strict-

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[2]3M cross-appealed, raising two alternative grounds to affirm and asserting its own claim of evidentiary error if we were to reverse and remand for a new trial. We affirm for the reasons discussed below and do not reach any of the issues 3M raised on cross-appeal.

liability design-defect as well as failure-to-warn under both negligence and strict-liability theories.

3M moved for summary judgment. Applying South Carolina substantive law, the district court granted in part 3M's motion. As relevant here, it granted summary judgment for 3M on the failure-to-warn claim because it found that 3M did not have sufficient actual or constructive knowledge of the Bair Hugger's alleged danger prior to Louis Gareis's surgery to owe a duty to warn. But it denied 3M's motion with respect to the Gareises' strict-liability design-defect claim, and that claim was the sole claim that went to trial.

The district court made several evidentiary rulings during trial that are relevant here. First, it prohibited the Gareises from introducing evidence of 3M's alleged knowledge of the risks and utility of the Bair Hugger at the time the Bair Hugger used in Louis Gareis's surgery left 3M's control. Second, the court prohibited the Gareises from introducing evidence of various alternative designs to the Bair Hugger that they proffered to support their design-defect claim (though it did allow them to introduce evidence of a patient-warming device called the TableGard as reasonable-alternative-design evidence). Third, over the Gareises' objection, the district court allowed 3M's expert, Dr. John Abraham, to testify about a computational-fluid-dynamics ("CFD") model he built.

After an approximately two-week trial, the jury returned a special verdict in favor of 3M, finding separately that (1) the Gareises failed to prove that the Bair Hugger was unreasonably dangerous for its intended use and that a reasonable safer alternative design existed, and (2) the Gareises failed to prove that Louis Gareis's PJI would not have occurred but for the use of the Bair Hugger during his surgery. The district court subsequently denied the Gareises' motion for a new trial. The Gareises appeal, challenging the three aforementioned evidentiary rulings and the grant of summary judgment regarding their failure-to-warn claim.

## II.

On appeal, it is undisputed that South Carolina law governs the Gareises' claims. Federal law governs the evidentiary issues on appeal, *see Hirchak v. W.W. Grainger, Inc.*, 980 F.3d 605, 608 (8th Cir. 2020), as well as the question whether summary judgment was properly granted, *see Hutcherson v. Progressive Corp.*, 984 F.2d 1152, 1155 (11th Cir. 1993).

### A.

First, we consider the Gareises' contention that the district court abused its discretion by excluding (1) evidence of 3M's knowledge of the risks and utility of the Bair Hugger and (2) evidence of reasonable alternative designs to the Bair Hugger besides the TableGard. In their motion for a new trial, the Gareises raised these same points. The district court rejected them, concluding that it had not erred in excluding the evidence and that, in any event, the Gareises had not identified any prejudice resulting from the exclusion of this evidence.

We review a district court's evidentiary rulings for an abuse of discretion. *Vogt v. State Farm Life Ins.*, 963 F.3d 753, 770 (8th Cir. 2020). Further, we will not set aside a verdict or grant a new trial due to an erroneous evidentiary ruling unless that ruling was prejudicial. *See id.* at 770-71. The burden of showing prejudice rests on the party challenging the evidentiary ruling. *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008). To carry this burden, the party must show that the excluded evidence was "of such a critical nature that there is no reasonable assurance that the jury would have reached the same conclusion had the evidence been admitted." *See id.* (internal quotation marks omitted); *Schultz v. McDonnell Douglas Corp.*, 105 F.3d 1258, 1259 (8th Cir. 1997) (framing this inquiry as "whether exclusion of the evidence was so prejudicial as to require a new trial which would be likely to produce a different result" (internal quotation marks omitted)).

Under South Carolina law, a strict-liability design-defect claim requires proof that (1) "the product, as designed, was in a defective condition unreasonably dangerous to the user when it left the control of the defendant" and (2) "the defect caused his injuries." *Madden v. Cox*, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985). Both risk-utility evidence and reasonable-alternative-design evidence bear on the first element. *See, e.g.*, *Newbern v. Ford Motor Co.*, 833 S.E.2d 861, 864 (S.C. Ct. App. 2019) ("Under the risk-utility test, a product is 'unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product.'" (quoting *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 328 (S.C. Ct. App. 1995))); *Holland ex rel. Knox v. Morbark, Inc.*, 754 S.E.2d 714, 720 (S.C. Ct. App. 2014) ("[P]roof of a reasonable alternative design is necessary to establish whether a product is unreasonably dangerous in a design defect case . . . ." (citing *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 13 (S.C. 2010))).

Although the Gareises argue that the evidence discussed above should have been admitted because it was relevant to the first element of their strict-liability design-defect claim, they fail to show prejudice from its exclusion. The jury returned a special verdict for 3M, finding that the Gareises failed to prove both that the Bair Hugger was defectively designed and that the Bair Hugger caused Louis Gareis's PJI. None of the evidence that the Gareises argue was erroneously excluded is relevant to the second element, causation. And even if it were, the jury heard extensive testimony about the "many different ways" the bacteria causing Louis Gareis's PJI may have entered the site of his hip implant, resulting in his PJI, besides use of the Bair Hugger during his surgery. These include bacteria on and in his own skin that could have entered the implant site via the surgical incision; bacteria on surgical staples used during his surgery that could have entered the implant site; bacteria shed from the skin of any one of the medical personnel in his operating room during the surgery that could have reached the implant site regardless of the Bair Hugger's use during his surgery; bacteria transmitted to the implant site by medical personnel's direct contact with it; bacteria in drainage from his wound after the surgery that could have leaked into the implant site; bacteria in his bloodstream obtained from an exposure other than his operation that could have traveled to and

infected the implant site; and bacteria from a hip injection he received after his surgery.

The Gareises do not mention this evidence supporting the jury's verdict on the causation issue, let alone explain why, in the face of this evidence, they suffered prejudice from the exclusion of their risk-utility and reasonable-alternative-design evidence. Accordingly, even assuming the risk-utility and reasonable-alternative-design evidence was erroneously excluded, we will not set aside the judgment and remand for a new trial on this basis.

B.

Next, we consider the Gareises' argument that the district court abused its discretion by allowing 3M's expert Dr. John Abraham to testify about operating-room airflow. This testimony was used to rebut the Gareises' theory of how the Bair Hugger caused Louis Gareis's PJI. They claim that this testimony should not have been admitted because 3M did not disclose the factual basis for it. *See* Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring disclosure of the "basis and reasons" for an expert's opinion); Fed. R. Civ. P. 37(c)(1) (providing that "[i]f a party fails to provide information . . . as required by Rule 26(a)," then "the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless"). The Gareises raised this same point in their motion for a new trial. The district court rejected it, finding both harmlessness and a lack of prejudice resulting from the admission of this testimony.

We review for an abuse of discretion a district court's decision to admit expert testimony. *Estate of West ex rel. West v. Domina Law Grp., PC LLO*, 981 F.3d 652, 654 (8th Cir. 2020). We will not reverse a jury verdict because of erroneously admitted expert testimony unless the party claiming error shows that the evidence had a "substantial influence" on the jury's verdict. *See McKnight ex rel. Ludwig v. Johnson Controls, Inc.*, 36 F.3d 1396, 1405 (8th Cir. 1994); *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 973 (8th Cir. 1995); *Qualley v. Clo-Tex Int'l, Inc.*, 212 F.3d 1123,

1128 (8th Cir. 2000). Making this showing is particularly difficult "where there is substantial evidence in the record beyond the evidence improperly admitted to support the jury's decision." *See McKnight*, 36 F.3d at 1405.

The Gareises assert in conclusory fashion that Dr. Abraham's testimony was "obviously prejudicial." Even considering this meager assertion of prejudice, *but see United States v. Fregoso*, 60 F.3d 1314, 1328 (8th Cir. 1995) (rejecting a "bare and unsupported assertion" of prejudice from expert testimony), we find no prejudice justifying reversal. Again, the jury heard extensive testimony about the various ways the bacteria causing Louis Gareis's PJI could have infected his implant site besides use of the Bair Hugger during his surgery. *See supra* Section II.A. The Gareises do not even mention all this other evidence, let alone explain why, notwithstanding this evidence, Dr. Abraham's testimony was prejudicial. Accordingly, even if the admission of Dr. Abraham's testimony was erroneous, we find no basis to reverse the jury's verdict on this ground. *See McKnight*, 36 F.3d at 1405.

## C.

Finally, we consider the Gareises' contention that the district court erred in granting summary judgment to 3M on their failure-to-warn claim asserted under both negligence and strict-liability theories. We review *de novo* the district court's grant of summary judgment. *Daredevil, Inc. v. ZTE Corp.*, 1 F.4th 622, 627 (8th Cir. 2021). "Summary judgment is appropriate if, when the record is viewed in the light most favorable to the nonmoving party, there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law." *Rossley v. Drake Univ.*, 979 F.3d 1184, 1186 (8th Cir. 2020). We may affirm summary judgment for any reason supported by the record. *Reasonover v. St. Louis Cnty.*, 447 F.3d 569, 578-79 (8th Cir. 2006); *see also Auman v. United States*, 67 F.3d 157, 161-62 (8th Cir. 1995); *United States v. Wood*, 834 F.2d 1382, 1389 & n.4 (8th Cir. 1987), *abrogation on other grounds recognized by United States v. Aguayo-Delgado*, 220 F.3d 926, 933 (8th Cir. 2000). Additionally, we "must disregard" any

errors that are harmless. Fed. R. Civ. P. 61; *see also* 28 U.S.C. § 2111. An erroneous grant of summary judgment may be disregarded as harmless when it is followed by a trial and the verdict rendered in that trial shows that the claim or claims resolved at summary judgment likewise would have failed at trial. *See, e.g.*, *Cavataio v. City of Bella Villa*, 570 F.3d 1015, 1024 (8th Cir. 2009); *Wing v. Britton*, 748 F.2d 494, 498 (8th Cir. 1984); *cf. Russell v. Anderson*, 966 F.3d 711, 730 (8th Cir. 2020) (concluding the same about judgment as a matter of law erroneously granted during trial).

The district court granted 3M summary judgment on the Gareises' failure-to-warn claim under both negligence and strict-liability theories because it concluded that 3M lacked sufficient actual or constructive knowledge at the time of Louis Gareis's surgery about the Bair Hugger's alleged dangers to have a duty to warn. Under South Carolina law, a product manufacturer such as 3M can be held liable for failing to warn of a product's dangers under either negligence or strict-liability theories if the manufacturer "know[s] or ha[s] reason to know the product is or is likely to be dangerous for its intended use." *See Livingston v. Noland Corp.*, 362 S.E.2d 16, 18 (S.C. 1987) (discussing negligent failure to warn); Restatement (Second) of Torts § 402A cmt. j (Am. Law Inst. 1965) (stating that a strict-liability failure-to-warn claim has a comparable know-or-have-reason-to-know element); S.C. Code § 15-73-30 (incorporating by reference the comments to Restatement (Second) of Torts § 402A to govern product-liability claims). The Gareises argue that summary judgment on their failure-to-warn claim under both theories was erroneous because a genuine dispute of material fact remained as to whether 3M actually or constructively knew that the Bair Hugger was or was likely to be dangerous in orthopedic surgeries so as to trigger 3M's duty to warn.[3]

We need not reach this question because an alternative ground exists to affirm. Under South Carolina law, a manufacturer or seller is liable under either theory for

---

[3]It is undisputed that 3M did not provide a warning for the Bair Hugger used in Louis Gareis's surgery.

failing to warn only if the plaintiff shows "that he was injured by the product" in question. *Dema v. Shore Enters., Ltd.*, 435 S.E.2d 875, 876 (S.C. Ct. App. 1993); *Bragg*, 462 S.E.2d at 326; *Madden*, 328 S.E.2d at 112; *see also Bray v. Marathon Corp.*, 588 S.E.2d 93, 95 (S.C. 2003) ("A products liability plaintiff must prove the product defect was the proximate cause of the injury sustained."); *Young v. Tide Craft, Inc.*, 242 S.E.2d 671, 679 (S.C. 1978) (holding that the plaintiff's failure-to-warn claim failed because she did not show that the issue with the product in question that ostensibly required a warning was a proximate cause of the injuries). The question whether the Bair Hugger used in Louis Gareis's surgery caused his PJI was tried to the jury, which returned a special verdict finding that the Gareises failed to prove this point. As 3M points out in its opening brief and as discussed above, *see supra* Section II.A., the jury heard extensive evidence supporting this finding. Its "verdict in favor of [3M] on the [causation issue] indicates the jury would not have found in favor" of the Gareises on their failure-to-warn claim even if the claim had survived summary judgment. *See Cavataio*, 570 F.3d at 1024. Thus, the district court's grant of summary judgment on this claim, "even if wrong, did no harm." *See Wing*, 748 F.2d at 498. Accordingly, we affirm it.[4]

### III.

For the foregoing reasons, we affirm.

_____

---

[4]In their opening brief, the Gareises repeatedly assert that the district court erroneously granted summary judgment to 3M regarding their duty-to-warn (or failure-to-warn) "claim." For the first time in their reply brief, they assert that other counts besides their failure-to-warn counts were erroneously dismissed at summary judgment for the same reason their failure-to-warn counts were erroneously dismissed. We do not consider whether these other counts were properly dismissed. *See, e.g.*, *United States v. Grace*, 893 F.3d 522, 525 (8th Cir. 2018) ("Issues not raised in a party's opening brief are waived."); *Lors v. Dean*, 595 F.3d 831, 835 n.3 (8th Cir. 2010) (per curiam) (finding waiver where the appellant failed to raise the erroneous dismissal of a count in his complaint until the reply brief).