**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1480
_____

GARTOR KIKI BROWN,
                                        Appellant

v.

LT. MAXWELL; C.O. PLOCINIK; C.O. JOHNSTON; C.O. FOCHTMAN
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3:18-cv-01527)
Magistrate Judge:  Honorable Martin C. Carlson (by consent)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 21, 2024
Before: SHWARTZ, RESTREPO, and FREEMAN, <u>Circuit Judges</u>

(Opinion filed: March 21, 2024)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this civil rights action, Gartor Kiki Brown appeals pro se from various pretrial orders, the entry of partial summary judgment, and judgment after a bench trial. For the following reasons, we will affirm.

I.

Brown, who is transgender, filed in the United States District Court for the Middle District of Pennsylvania a complaint (ECF 1), which she later amended (ECF 25), alleging that she was physically and sexually assaulted in the Restricted Housing Unit (RHU) by her cellmate, Raheem Allen, between February 3 and February 7, 2018. (ECF 1.) In particular, Brown complained that Allen physically assaulted her on each of those days, and that he sexually assaulted her on February 7, 2018. Brown asserted that four Department of Corrections (DOC) employees—Lieutenant Maxwell, Officer Plocinik, Officer Johnston, and Officer Fochtman—failed to protect her and provided inadequate medical care for her injuries. The parties filed cross-motions for summary judgment. (ECF 92; 113; 114; 115; 119.) The District Court denied Brown's summary judgment motion and granted the defendants' motion in part and denied it in part. (ECF 137.) In relevant part, the District Court granted summary judgment on the medical care claim in favor of Officer Plocinik and Lieutenant Maxwell because the "record is devoid of any evidence that either [of them] denied Brown medical treatment." (ECF 137, at 27 of 30.) The District Court also granted summary judgment in favor of all defendants on Brown's substantive due process claim based on the "more-specific provision" rule. (Id. at 27-28.) Finally, the District Court held that Brown's state law claims for negligence and

2

intentional infliction of emotional distress were barred by sovereign immunity.  (Id. at 28-29.)

The case proceeded to a three-day nonjury trial to resolve disputed facts on Brown's failure to protect claims against all four defendants, as well as her claim for the denial of medical care against Officers Johnston and Fochtman.  Brown represented herself.  (ECF 156.)  Following that trial, the Magistrate Judge, who presided by consent (ECF 188),[1] issued an opinion holding that Brown "failed to prove that the defendants violated her Eighth Amendment rights."  (ECF 257, at 3-4.)  Brown timely appealed.[2] (ECF 261.)

## II.

We begin our review with the District Court's findings of fact and conclusions of law following the non-jury trial.  After a bench trial, "we review the District Court's factual findings, and mixed questions of law and fact, for clear error, and we review the Court's legal conclusions *de novo*."  Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J., 853 F.3d 671, 682-83 (3d Cir. 2017).  "To the extent that the District Court's conclusions rested on credibility determinations [made at a bench trial], our review is particularly deferential."  Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am., 609 F.3d 143, 156-57 (3d Cir. 2010) (citing Anderson v. Bessemer City, 470 U.S. 564, 575 (1985)).

---

[1] In this opinion, we will refer to the Magistrate Judge as the District Court.

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291.

A.

Brown challenges the District Court's rejection of her Eighth Amendment failure

to protect claim. (Doc. 33, at 60-78.) The Eighth Amendment imposes "a duty upon

prison officials to take reasonable measures to protect prisoners from violence at the

hands of other prisoners." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)

(citations and internal quotations omitted). To establish a failure to protect claim,

inmates must demonstrate that (1) they are "incarcerated under conditions posing a

substantial risk of serious harm"; and (2) the prison official acted with "deliberate

indifference" to their health and safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

"[T]he official must actually be aware of the existence of the excessive risk; it is not

sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d

120, 133 (3d Cir. 2001). The District Court did not err in concluding that Brown failed to

show that the defendants knew that Allen posed a substantial risk to her safety.

All four defendants testified that Brown did not express concerns about being

housed with Allen until after the assaults allegedly had taken place.[3] (ECF 268, at 75-78

---

[3] The District Court found that the defendants' testimony was credible because it was "consistent, mutually corroborative, and supported by the testimony of other witnesses . . . ." (ECF 257, at 3.) Brown challenges these credibility determinations. (Doc. 33, at 56-58.) But because credibility determinations are "quintessentially the province of the trial court," we reject them only in "rare circumstances." Dardovitch v. Haltzman, 190 F.3d 125, 140 (3d Cir. 1999); see also Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am., 609 F.3d 143, 156-57 (3d Cir. 2010) ("To the extent that the District Court's conclusions rested on credibility determinations, our review is particularly deferential."). The minor inconsistencies that Brown identifies—such as those surrounding Officer Johnston's recollection of his interactions with Brown—are not sufficient to cause us to set aside the District Court's credibility determination.

of 181; ECF 269, at 76-77 of 130; ECF 270, at 53, 171 of 193.)  In addition, although Brown asserted that she asked to be separated from Allen, the only evidence of such a request was a grievance that she filed on February 16, 2018, over a week after the alleged assaults took place.  (ECF 203-10, at 5 of 10.)  Lieutenant Maxwell explained that while he knew that Allen had been issued numerous misconducts, none of those misconducts suggested that he would assault Brown.  (ECF 270, at 17.)  Brown alleged that Officer Johnston witnessed Allen assault her.  Johnston denied this claim, explaining that Brown simply alerted him that she had a bloody nose and denied his offer to seek medical help.  (ECF 268, at 54, 70.)  The District Court "credit[ed] this testimony[,]" in part because it was corroborated by Officer Fochtman's explanation that Brown and Allen, who exhibited no visible injuries, denied that they had been fighting.[4]  (ECF 257, at 28; ECF 270, at 173-74.)

In sum, the record supports the District Court's factual finding that the defendants were not actually aware of the existence of an excessive risk to Brown.  See Ball v. LeBlanc, 792 F.3d 584, 592 (5th Cir. 2015) ("The predicate findings of a substantial risk of serious harm and officials' deliberate indifference to the risk are factual findings reviewed for clear error."); see also Shorter v. United States, 12 F.4th 366, 374 (3d Cir.

---

[4] Brown's claim was further undermined by the testimony of her counselor, who indicated that Brown did not report an assault when they met on February 9, 2018.  (ECF 270, at 144-46.)  In addition, a nurse who spoke to Brown on February 13, 2018, after she first reported the sexual assault, stated that Brown had no visible injuries and refused medical care.  (ECF 268, at 110-11.)  Evidence also established that Brown had "consistently refused to take cellmates, tried to obtain single-cell status, and made unfounded accusations against other inmates and staff."  (ECF 257, at 31.)

2021).  Although requisite knowledge of a substantial risk of serious harm can be demonstrated by inferences from circumstantial evidence, see Farmer, 511 U.S. at 842, a review of the trial record convinces us that there is no evidence of such knowledge on the part of the defendants.  Given the absence of evidence of such knowledge, the District Court's factual findings were not clearly erroneous and its rejection of Brown's failure to protect claim was proper.

B.

The District Court also properly rejected Brown's claim that the defendants failed to provide adequate medical care for her injuries.  To succeed on an Eighth Amendment medical needs claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  "A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention."  Thomas v. City of Harrisburg, 88 F.4th 275, 281 (3d Cir. 2023) (internal quotation omitted).

In this case, the only credible evidence of a physical injury was a nosebleed that Brown reported of February 7, 2018.  It would not be apparent to a layperson that a nosebleed is serious under the Eighth Amendment, and Brown did not provide expert evidence to the contrary.  Other evidence further undermines any suggestion that the nosebleed was a serious medical condition.  For example, Officer Fochtman testified that

6

when he arrived at Brown's cell, she was not actively bleeding. (ECF 270, at 162.) In addition, Brown informed Officer Fochtman that she "occasionally get[s] bloody noses" and that she did not need medical attention. (ECF 270, at 155, 166.) Furthermore, although Brown reported injuries in a sick call slip that she submitted on February 13, 2018, she refused the medical treatment that was offered. (ECF 268 at 110-11.) And inmate contact notes prepared by prison psychiatric staff during the relevant time period contain no reference to Brown reporting any injuries. Under these circumstances, the District Court did not err in concluding that Brown failed to prove that she had a serious medical need.

### III.

We next turn to Brown's challenges to rulings on case management issues, discovery matters, and evidentiary disputes. Brown complains that the District Court rejected her first proposed amended complaint. There was no abuse of discretion, however, because that proposed complaint failed to comply with Federal Rules of Civil Procedure 8 and 20. See Garrett v. Wexford Health, 938 F.3d 69, 91 (3d Cir. 2019). As the District Court accurately explained, the proposed amended complaint included "separate unrelated claims in a single complaint . . . , fail[ed] to include a case caption, fail[ed] to identify individual defendants, and fail[ed] to be direct and concise." (ECF 24, at 1 of 2.) In addition, any possible prejudice from the rejection of Brown's first proposed amended complaint was eliminated when she successfully filed a second amended complaint. Brown also complained that she was not able to call one of her witnesses, who had emergency surgery on the day that he was scheduled to testify. (ECF

7

270, at 82.) But Brown failed to show that she was prejudiced by the absence of the witness. According to Brown, that witness would have testified about "the misconduct that brought . . . Allen to the RHU." (Id. at 83.) But the misconduct report itself was entered into evidence, and Brown has not explained what relevant additional information the witness would have provided. Cf. Jennings v. BIC Corp., 181 F.3d 1250, 1259 (11th Cir. 1999) (holding that District Court did not abuse its discretion in denying motion for continuance where, among other things, unavailable expert's testimony would have been duplicative of plaintiff's other experts).

In addition, the District Court properly denied Brown's discovery requests for video footage of her cell, for the DOC's Prison Risk Assessment Tool (PRAT), and for records pertaining to Allen. See Petrucelli v. Bohringer and Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995) (applying "abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery"). According to Lieutenant Maxwell, no video footage of Brown's cell existed. (ECF 84, at 11; ECF 270, at 23.) Furthermore, there was no abuse of discretion in the denial of Brown's request for the PRAT, which DOC staff uses to determine which inmates are "housing concerns." (ECF 270, at 30-31.) Brown claimed that he needed this policy to discover how his own risk score was calculated, but given the slim relevance of his risk score to the case, he cannot have been prejudiced by the District Court's order. Likewise, Brown has not identified an abuse of discretion in the District Court's denial of records pertaining to Allen. See Cyberworld Enter. Techs, Inc. v. Napolitano, 602 F.3d 189, 200 (3d Cir. 2010) (stating that we "will not disturb [discovery] orders without a showing of actual and substantial prejudice").

8

After examining those records *in camera*, the District Court concluded that they were either irrelevant or would, if disclosed, threaten the orderly operation of the prison and the security of other inmates. (ECF 108, at 2-3); Washburn v. Lavoie, 437 F.3d 84, 93 (D.C. Cir. 2006) (concluding that there was no abuse of discretion in the denial of a request for discovery after Magistrate Judge reviewed documents *in camera*).

We also discern no abuse of discretion in the challenged evidentiary rulings. See Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 519 (3d Cir. 2003) ("We will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." (citation omitted)). The District Court properly held that several of Brown's proposed exhibits were irrelevant to her claims. For example, Brown sought to introduce statements from other inmates suggesting that, months before the assaults by Allen, she had expressed a general fear of being in a cell with another inmate. But those statements had no bearing on whether the defendants were aware that being housed with Allen would pose an excessive risk to Brown. See Fed. R. Evid. 401 (stating that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence"). Brown also sought to call as a witness an inmate who purportedly would have testified that Brown told him about the assaults by Allen. Such testimony, however, would have been hearsay, and Brown failed to identify any relevant exceptions to the hearsay rule. See Fed. R. Evid. 801 and 802. Furthermore, the District Court did not abuse its discretion in barring Brown from attempting to impeach witnesses with irrelevant evidence. Our review of the record indicates that the evidence that Brown

9

sought to introduce did not materially contradict the witnesses' testimony or call their credibility into doubt.[5]

## IV.

Finally, we address the order granting in part the defendants' motion for summary judgment, which we review de novo. See DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Brown alleges that the District Court erred in concluding that the evidence failed to demonstrate that Officer Plocinik and Lieutenant Maxwell had any personal involvement in her medical treatment. (Doc. 33, at 85-88.) As noted, an incarcerated plaintiff asserting a claim for inadequate medical care under the Eighth Amendment must show the existence of a serious medical need and that facility staff demonstrated deliberate indifference to that medical need. See Pearson, 850 F.3d at 534. "[I]n the face of a motion for summary judgment, a . . . plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." Jutrowski v. Twp. of Riverdale, 904 F.3d 280, 291 (3d Cir. 2018).

---

[5] To the extent that Brown seeks to challenge evidentiary rulings that she did not preserve for review, we conclude that those rulings were not plainly erroneous. See Fed. R. Evid. 103(e) (providing that a "court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved"); Franklin Prescriptions, Inc. v. N.Y. Times Co., 424 F.3d 336, 341 (3d Cir. 2005) (explaining that plain error review "should be exercised sparingly" and "should only be invoked with extreme caution in the civil context" (quoting Fashauer v. N.J. Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995))).

Brown claims that "the record[] is evident that at the time [she] was [housed] . . . with the [perpetrator of the assaults,] defendants knew that Brown was being assaulted, resulting in pain and injuries." (Doc. 33, at 86.) We conclude that, even if there were a genuine issue of material fact at the summary judgment stage about whether Officer Plocinik and Lieutenant Maxwell denied or delayed access to medical care, any error by the District Court was harmless because, as discussed above, the District Court properly concluded at trial that "Brown has not established that she had a serious medical need to which the defendants were deliberately indifferent." (ECF 257, at 29 of 32); see Gareis v. 3M Co., 9 F.4th 812, 818 (8th Cir. 2021) (explaining that "[a]n erroneous grant of summary judgment may be disregarded as harmless when it is followed by a trial and the verdict rendered in that trial shows that the claim or claims resolved at summary judgment likewise would have failed at trial").

Brown also challenges the District Court's determination that her state law claims were barred by sovereign immunity. (Doc. 33, at 24-26 of 101.) Employees of Commonwealth agencies acting within the scope of their duties enjoy immunity for their negligent acts, see 1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. § 8521, and for intentional torts. Wilson v. Marrow, 917 A.2d 357, 364-65 (Pa. Commw. Ct. 2007). Brown argues that the District Court should have applied an exception to that rule for "sexual abuse." (Doc. 33, at 24.) That exception exists only for "[c]onduct which constitutes an offense enumerated under [42 Pa. Cons. Stat. Ann. §] 5551(7)." 42 Pa. Cons. Stat. Ann. § 8522(b)(10). Section 5551(7), in turn, is limited to offenses in which "the victim was under 18 years of age at the time of the offense." See 42 Pa. Cons. Stat.

11

Ann. § 5551(7). Because Brown does not assert that she was under 18 in February 2018, the "sexual abuse" exemption is inapplicable. In sum, we conclude that the District Court's entry of partial summary judgment for the defendants was proper.[6]

V.

For the foregoing reasons, we will affirm the judgment of the District Court.[7]

---

[6] To the extent that Brown complains about the application of the "more-specific provision" rule, her argument lacks merit. As the District Court accurately explained, Brown's substantive due process claim under the Fourteenth Amendment was not supported by facts distinct from those relevant to her Eighth Amendment claims. See Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 447-48 (3d Cir. 2020) (requiring a constitutional claim that is covered by a specific constitutional provision to be analyzed only under that provision).

[7] We grant Appellant's Motion to Exceed Page Limitation (Doc. 31), her Motion to Amend and Supplement Cover Page, which we also construe as a motion to file an amended brief (Doc. 38), her Motion for Leave to File Supplemental Appendix (Doc. 46), and Appellees' Motion Seeking Leave to File a Supplemental Appendix (Doc. 42).