# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1132
_____

Rod Warren; Eric Booker

*Plaintiffs - Appellants*

John Manz; Dion Foster; Bryant Wells

*Plaintiffs*

v.

Nucor Corporation

*Defendant - Appellee*

Chris Booker; Troy Brooks; Brad Campbell; Kellie Crain; Jay Henderson; Lou
Incrocci; David Reinhart; Greg Starnes; Keith Williams

*Defendants*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern
_____

Submitted: July 18, 2025
Filed: September 9, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Rod Warren and Eric Booker appeal the district court's[1] grant of summary judgment to the Nucor Corporation on their claims of racial discrimination, a racially hostile work environment, and retaliation. We affirm.

## I. Background

On review of a grant of summary judgment, we view facts and draw "reasonable inferences" in the light most favorable to the nonmoving party—here, Warren and Booker. *See Scott v. Harris*, 550 U.S. 372, 378 (2007). We begin with Warren's allegations. Warren worked at the Nucor steel plant in Blytheville, Arkansas from 1994 until his termination in 2022. During his long tenure at the plant, Warren received a mixture of positive and negative feedback on his performance reviews, as well as occasional warnings for policy infractions. He also alleges various incidents occurred during this time that created a racially hostile work environment.

The events that immediately led to Warren's termination began on July 9, 2021, when Nucor management interviewed Warren regarding a recent allegation by one of his coworkers that Warren had used a racial slur. The interview began with a management representative asking if Warren knew why he was being interviewed. He replied, "If I'm over here, it's always some BS." Upon being informed of the coworker's allegation, Warren became irate and aggressive. He denied that he had used a racial slur and stated that he was "madder than a motherfucker" and "one pissed off motherfucker." He also stated, "I can't keep my shit together," "I need to cool the fuck down," and "It's real tough for me to keep my shit in check." He threatened the coworker whom he believed had reported him, stating that management had "better hope" he didn't see the coworker. As a result

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

-2-

of Warren's actions during the July 9 interview, Nucor suspended Warren with pay while it investigated the allegation.

Nucor's investigation did not confirm that Warren had used a racial slur, and Nucor allowed Warren to return to work.[2]  However, because of Warren's conduct during the interview, on July 21 Nucor management held another meeting with Warren and informed him that he would be required to attend anger management classes and would be placed on a last chance agreement.  The last chance agreement made clear that Warren would be terminated if he failed to comply with Nucor's policies again.  Warren signed the agreement but refused to sign the related third step warning, asserting that he wanted Nucor to further investigate his previous attendance violations identified in the document.  A little over a month later, in September 2021, Warren filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that his recent discipline—i.e., the anger management classes and last chance agreement—resulted from racial discrimination.

Several months later, in February 2022, Warren failed to perform certain job duties.  When his supervisor questioned Warren about his performance, Warren stated that he had already told the supervisor's boss about the incident.  The supervisor continued to question Warren, who became irate, insisting that he had failed to perform his job duties because he had been sick.  During this conversation, Warren swore repeatedly and informed the supervisor, among other things, that he had "stayed to help my fucking co-worker out" and that "[n]ext time I will take my ass home."  Three days later Nucor fired Warren, citing poor work performance, insubordination, and aggressive and threatening behavior in violation of his last chance agreement.

---

[2]Warren asserts that he did not, as accused, use the word "nigger" in conversation with his coworker.  Rather, he maintains that he used the word "negro" and that he told his coworker that it means "less than and not a citizen of."

We now turn to Booker's allegations. Booker worked at the Blytheville steel plant from 2018 until his resignation in 2022. Like Warren, Booker alleges that he suffered racial discrimination and harassment while he was employed at Nucor. For instance, in September 2020, Booker used the same procedures that his white coworkers always used to request a vacation day, but his supervisor singled Booker out for discipline. Booker complained to management about the supervisor, and, after an investigation, Nucor reassigned the supervisor. Booker filed an EEOC charge in January 2021, alleging racial discrimination related to this incident. Then, sometime in early April 2021, a different supervisor, who was also white, made an offensive remark to Booker about being his "slave driver" while pretending to crack a whip. On April 26, Booker reported the incident to Nucor, which investigated the incident. It fired the offending supervisor eight days later on May 3. On May 2, Nucor issued Booker a first-step warning because he had arrived late for a scheduled shift. Booker believed that this warning was issued in retaliation for his report. Accordingly, on May 27, Booker filed a second EEOC charge, alleging that Nucor had retaliated against him because he had filed the first EEOC charge and because he had reported the whip-cracking incident. By October 2022, Booker had come to believe that Nucor management desired him to leave and were "nitpicking" and "targeting" him when they created and enforced rules. Booker resigned, citing his low morale and bad experiences with management.

In April 2022, Warren and Booker, along with three other current and former Nucor employees, sued Nucor and several of its employees in Arkansas state court, seeking damages under Title VII, the Arkansas Civil Rights Act of 1993 ("ACRA"), and the Arkansas Constitution. Nucor removed the case to the Eastern District of Arkansas. The plaintiffs subsequently amended their complaint, removing one plaintiff, all the Nucor employee defendants, and all the Title VII claims.[3] Nucor

---

[3]The case was initially removed pursuant to federal question jurisdiction, *see* 28 U.S.C. § 1441, because of the Title VII claims. Then, in the First Amended Complaint, the plaintiffs dropped their Title VII claims as well as their claims against the non-diverse parties. As complete diversity now exists, the district court

-4-

moved for summary judgment, and the district court granted summary judgment to Nucor on all the remaining claims. Warren and Booker appeal the grant of summary judgment to Nucor on their claims of racial discrimination, retaliation, and a racially hostile work environment under the ACRA.

## II. Analysis

We review a district court's grant of summary judgment *de novo*. *Gareis v. 3M Co.*, 9 F.4th 812, 818 (8th Cir. 2021). Summary judgment is appropriate if, when the record is viewed in the light most favorable to the nonmoving party, *id.*, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We may affirm summary judgment for any reason supported by the record. *Gareis*, 9 F.4th at 818. Sitting in diversity jurisdiction, we apply state substantive law. *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prods., Inc.*, 887 F.3d 413, 415 (8th Cir. 2018). All claims here were brought under the ACRA and require the same analysis as claims brought under Title VII. *Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000).

### A. Racial Discrimination

We first address Warren's racial discrimination claim.[4] Warren seeks to establish this claim under the *McDonnell Douglas* burden-shifting framework rather

_____

exercised jurisdiction pursuant to federal diversity jurisdiction. *See* 28 U.S.C. § 1332.

[4]We need not address Booker's racial discrimination claim. Booker voluntarily nonsuited that claim before the district court and now argues he should be allowed to revive it because *Muldrow v. City of St. Louis* altered our Title VII antidiscrimination analysis. 601 U.S. 346, 359 (2024). Litigants cannot revive previously nonsuited claims on appeal simply because an applicable legal standard has changed. Once a party has intentionally relinquished a claim, "the claim is

than by presenting direct evidence of discrimination. Therefore, to succeed, he "must first make a prima facie case of employment discrimination." *See Moody v. Vozel*, 771 F.3d 1093, 1097 (8th Cir. 2014). To do this, Warren must prove that he "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) suffered under circumstances permitting an inference of discrimination." *Id.* (citation modified). If Warren makes this threshold showing, then the burden shifts to Nucor to offer a legitimate, non-discriminatory justification for the adverse employment action. *See id.* If Nucor meets this burden, then the burden shifts back to Warren to prove that Nucor's justification is merely pretextual. *See id.*

Warren failed to establish the existence of a genuine issue of material fact regarding the fourth element of his *prima facie* case—that he "suffered under circumstances permitting an inference of discrimination." *See id.* In response to Nucor's motion for summary judgment, Warren argued that similarly situated white employees were subject to more lenient discipline than him. The district court rejected this argument because Warren failed to present evidence of other white employees who also violated a last chance agreement but who were treated more leniently. On appeal, Warren does not contest this finding but instead argues that the district court improperly ignored the evidence of pretext he had presented. He points out that though evidence of pretext is usually considered at step three of the *McDonnell Douglas* analysis, it may also be used to satisfy the "inference-of-discrimination" element of the *prima facie* case. *See Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). Warren argues that he presented evidence of pretext because Nucor "failed to follow its own policies." *See id.* He asserts that Nucor violated its policies when it (1) listed infractions that were over a year old on his last chance agreement, (2) failed to have Warren sign the third step warning, and (3) investigated an employee's allegation that Warren had used a racial slur while offsite.

---

waived and therefore unreviewable on appeal." *Styczinski v. Arnold*, 141 F.4th 950, 955 (8th Cir. 2025).

To show pretext Warren must establish that a genuine issue of material fact exists regarding whether racial discrimination, rather than his own misconduct, "actually motivated" Nucor's termination decision. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011). Warren's arguments fail, because Nucor's alleged policy violations fail to demonstrate a discriminatory motive. First, Nucor placed Warren on a last chance agreement because of his conduct during an interview with company management. During this meeting he demonstrated an utter lack of anger management, used extensive profanity, and threatened his coworker. Warren was not placed on a last chance agreement because of his old infractions but because of his own misconduct. Regardless of whether Nucor has a policy against considering old infractions, that Nucor considered them here does not create an inference of racial discrimination. Second, Nucor gave Warren the opportunity to sign his third step warning, but he declined to do so. This does not give rise to an inference of racial discrimination. And third, Nucor's investigation of an off-site racial slur does not create an inference of pretext. Even Warren admitted during his deposition that Nucor should have investigated the allegation. The district court properly granted summary judgment because Warren failed to establish the existence of a genuine dispute of material fact regarding whether racial discrimination actually motivated Nucor's termination decision.

**B. Retaliation**

We next address Warren's and Booker's retaliation claims. To establish a *prima facie* case of retaliation, an employee must prove that "(1) he engaged in protected conduct, (2) he suffered a materially adverse employment action, and (3) the adverse action was causally linked to the protected conduct." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011).

Warren alleges two adverse employment actions: being placed on a last-chance agreement and being terminated. He alleges two instances of protected conduct: in September 2021 when he filed an EEOC complaint and at the July 21,

2021 meeting when he said that he was being racially discriminated against after being informed that he had been placed on a last chance agreement.[5] The timing does not permit an inference of retaliation. Nucor placed Warren on a last-chance agreement *before* either instance of protected activity. And Nucor did not terminate Warren until February 11, 2022—nearly seven months after the meeting and over five months after the EEOC complaint. "Generally, more than a temporal connection is required to present a genuine factual issue on retaliation," and "[t]he inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). Thus, Warren failed to establish a genuine dispute of material fact as to whether his protected conduct was causally connected to the adverse employment actions.

For his part, Booker claims he was retaliated against for complaining about the supervisor who made an offensive remark about being his "slave driver" because he received a tardiness warning the day before the supervisor was terminated. Booker failed to establish that he suffered a materially adverse employment action. *See Muldrow*, 601 U.S. at 357 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (explaining that Title VII's anti-retaliation provision "applies only when the retaliatory action is 'materially adverse,' meaning that it causes 'significant' harm"). The tardiness warning did nothing more than provide notice that if Booker continued to arrive late, he could be fired. *See Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 943 (8th Cir. 2019) ("[Employer] only told

---

[5]Warren also seems to assert that he was retaliated against when he was placed on the last chance agreement after he expressed his general indignation during the July 9 interview. This assertion fails. Disciplining an employee because he threatened coworkers and used offensive language is not "retaliation." Warren also asserts—for the first time in his reply brief—that he engaged in protected activity when he complained to his supervisor on January 12 that Nucor "is a racist company." He did not raise this before the district court and did not raise it here until his reply brief. "It is well settled that we do not consider arguments raised for the first time in a reply brief." *Wengert v. Rajendran*, 886 F.3d 725, 729 n.2 (8th Cir. 2018).

[employee] that her role would change *if* she did not qualify for leave and continued to miss work. This was not a threat to demote her for attempting to exercise her statutory rights. Rather, it provided notice that *unexcused* absences from work would have consequences."). The district court properly granted summary judgment to Nucor on Warren's and Booker's retaliation claims.

## C. Hostile Work Environment

We finally address Warren's and Booker's hostile work environment claims. "To sustain a claim for hostile work environment, a plaintiff must show that (1) he or she is a member of a protected class; (2) he or she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of his or her employment." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (citation modified). This is both an objective and subjective inquiry—in other words, the harassment must be "both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed by" the plaintiff. *Id.* To determine whether harassment was objectively hostile, "we look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance and whether the conduct unreasonably interfered with the employee's work performance." *Id.* at 518-19 (citation modified). This is a "demanding" standard and does not encompass "ordinary tribulations of the workplace." *Id.* at 519. The workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005).

Evidence of harassment not directly experienced by a particular plaintiff may still be relevant to establishing an objectively hostile work environment, especially where there is evidence that the offensive remarks became known to all plaintiffs. *Ellis v. Houston*, 742 F.3d 307, 320-21 (8th Cir. 2014). Here, assuming that Warren

and Booker each knew about the other's experiences, we consider their claims together.

Warren points to several distinct incidents as evidence of a racially hostile work environment, while Booker points only to one—the incident where his white supervisor referred to himself as Booker's slave driver and made a whip-cracking motion. Warren first asserts that his white coworker, motivated by racism, falsely alleged Warren had used a racial slur. Warren also points to several other events that occurred during his tenure at Nucor. In 2002, a black coworker told Warren that a white supervisor had remarked "[w]ell, there goes the neighborhood," after learning that the coworker had bought a home nearby. Warren did not report this incident to Nucor. In 2010, Warren and several coworkers circulated an email with "poem-like text" that discussed racially offensive terms and topics. Nucor determined that the email had violated its harassment policy and suspended the employees for three days. Warren's coworker, with his approval, published an article criticizing the discipline and referencing three unidentified black former employees who had resigned because they believed they had been mistreated or discriminated against. In 2019 or 2020, a white Nucor employee posted a comment to the Facebook page of Warren's brother that made a joking reference to wearing KKK robes. Warren reported the comment to his supervisor on a Monday. Nucor completed its investigation that Friday and fired the offending employee the following week. Also around this time, Warren viewed a video that had been posted on social media by a white Nucor employee and that included a confederate flag hanging in the background. Warren did not report this incident to Nucor.

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation modified). Most of Warren's allegations involved isolated incidents that could hardly be characterized as "extremely serious." *See id.* An unreported twenty-year-old remark that Warren heard secondhand, an email he circulated himself, and two social media posts, one of which he never reported and the other of which resulted

in the responsible employee's immediate termination, do not rise to the "demanding" standard required for hostile work environment claims. *See Anderson*, 606 F.3d at 519. The two most serious allegations are that Warren was subject to an unnecessary investigation based on the false claim of his racist coworker and that Booker's supervisor referred to himself as Booker's slave driver and made a whip-cracking motion.

To establish a hostile work environment claim based on the actions of his coworker, Warren must present evidence that Nucor "knew or should have known about the harassment and failed to respond in a prompt and effective manner." *See id.* (citation modified); *see also Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) ("If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions."). Warren failed to present any evidence that Nucor knew or should have known his coworker was motivated by racism when the coworker alleged Warren had used a racial slur. Even assuming Nucor knew that his coworker might be racially harassing him by making the false allegation, Warren provides no alternative "manner" in which Nucor ought to have responded. Upon learning of the racial slur allegation, Nucor did not discipline Warren but suspended him with pay—including pay for scheduled overtime—while it investigated. Upon failing to confirm that Warren had used a racial slur, Nucor fully reinstated Warren without discipline, albeit subject to a last chance agreement because of his conduct during the July 9 interview with management. Warren concedes that Nucor should have investigated the allegation; given this, we fail to see what else Nucor should have done.

Similarly, Booker alleged only a single incident of harassment by his supervisor, and Nucor responded to this incident "swiftly and effectively." *See McCurdy v. Arkansas State Police*, 375 F.3d 762, 773 (8th Cir. 2004) (finding employer was not liable for hostile work environment claim based on supervisor's harassment when it acted "swiftly and effectively" by terminating the offending supervisor). Within eight days of Booker's initial report, Nucor had investigated and terminated the offending supervisor.

In sum, viewing the allegations as a whole, Warren and Booker failed to establish the existence of a genuine issue of material fact regarding their hostile work environment claims. The district court properly granted summary judgment to Nucor on Warren's and Booker's hostile work environment claims.

## III. Conclusion

For the foregoing reasons, we affirm.

_____